UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BOSTON SPORTS MEDICINE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.: |
| | : | |
| BOSTON SPORTS MEDICINE & RESEARCH | : | |
| INSTITUTE, LLC, and DR. THOMAS J GILL, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF, BOSTON SPORTS MEDICINE, INC.'S**
**COMPLAINT AND JURY DEMAND**

NOW COMES, the Plaintiff, Boston Sports Medicine, Inc., and files this Complaint against the Defendants, Boston Sports Medicine & Research Institute, LLC, and Dr. Thomas J. Gill alleging as follows:

**NATURE OF THE ACTION**

1.     This action arises under the Trademark Act of 1946, 15 U.S.C. §§1051 *et seq*., as amended (the "Lanham Act"), and the laws of the Commonwealth of Massachusetts.  Plaintiff owns Federal and State Registrations for the BOSTON SPORTS MEDICINE service mark (hereinafter the "BOSTON SPORTS MEDICINE Mark"), for use in connection with a variety of goods and services in the field of rehabilitation and physical therapy.  In or around 2014, upon Defendant's departure from numerous high profile medical positions, including within Major League Baseball and the National Football league, Defendant Dr. Gill hijacked Plaintiff's trademark, branding, name recognition, and reputation to reestablish a lucrative career within

Steward Medical Group, New England Baptist Hospital and Mass General Brigham ACO, which provided the defendant the opportunity to establish the Boston Sports Performance Center.

2.     Thus, despite partaking in patient care relationships with Plaintiff for years, Defendant has been and currently is improperly using Plaintiff's service mark and domain name to confuse consumers.  Defendant's willful and intentional activities have and are likely to continue to cause consumer confusion unless enjoined.

## PARTIES

3.     Plaintiff, Boston Sports Medicine, Inc., (hereinafter "Boston Sports Medicine") is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal office located in Boston, Massachusetts that does business at, among other locations, 1 Braintree Street Allston, Massachusetts 02134, under the name Boston Sports Medicine.

4.     Defendant, Boston Sports Medicine & Research Institute, LLC, (hereinafter "Defendant" or "BSMRI"), is a limited liability company organized under the laws of the Commonwealth of Massachusetts on January 15, 2014, with a principal office indicated in its 2021 Annual Report as located at 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201 and a principal office indicated in its 2020, 2019, 2018, and 2017 Annual Reports as located at 8 Hawthorne Place, Suite 110, Boston, Massachusetts 02114, and an office indicated on its corporate documents of 40 Allied Drive, Dedham, Massachusetts 02026.

5.     Defendant, Thomas J. Gill, M.D., is an individual at all times relevant hereto residing in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

6.     Jurisdiction in this Court is proper as the Complaint poses federal questions arising under particular federal statutes, including the Federal Trademark Act (the "Lanham Act") as

amended in 15 U.S.C., §§1051 *et seq*., and the Unfair Competition Act under 15 U.S.C., §§1125 *et seq*.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C., §§1331 and 1338, and 15 U.S.C., §1121.

7.     To the extent that the instant Complaint contains claims for relief under the laws of the Commonwealth of Massachusetts, those claims are specifically authorized to be brought in this Court under the supplemental jurisdiction provision of 28 U.S.C., §1367 and under 28 U.S.C., §1338.

8.     The Court has personal jurisdiction over Defendants as they are conducting business within the Commonwealth of Massachusetts by, among other things, contracting to offer and offering services in the Commonwealth.

9.     Venue is proper in the Commonwealth of Massachusetts and in this District pursuant to 28 U.S.C., §1391 because a substantial part of the events or omissions giving rise to this action occurred in this District and Defendants are incorporated and reside in the Commonwealth and within this judicial District.

## **FACTS**

10.     Boston Sports Medicine was founded in 1999, as the result of years of planning, training, and education by its owner Dr. Michael J. Velsmid ("Dr. Velsmid").

11.     Boston Sports Medicine was incorporated on January 1, 2001, as Allston-Brighton Physical, Inc.  The company has operated as Boston Sports Medicine since January 2001 and filed an amendment to change its name to Boston Sports Medicine, Inc. with the Secretary of State on November 19, 2003.  Exhibit A.

12.     Boston Sports Medicine launched the website, <bostonsportsmed.com> on or around June 30, 2003 in correspondence with the use of the Boston Sports Medicine Mark.

13.     In addition to a thriving web presence which provides interactive programs for users world-wide, Boston Sports Medicine possesses multiple well-known and successful clinics throughout Eastern Massachusetts, including Boston, Brookline, Swampscott, Somerville, and Watertown. Boston Sports Medicine was offering services at a clinic in Dedham Massachusetts, however Defendants' activities illustrated in this Complaint have caused BSM to have to close that shop.  More recently, Boston Sports Medicine has offered services nationally and internationally to clients from various countries around the globe.

14.     Boston Sports Medicine specializes in sports, dance, orthopedic, and post-surgical physical and aquatic therapy.

15.     Dr. Velsmid received his degree of Doctor of Physical Therapy from MGH Institute of Health Professions, his Master of Science in Exercise Science from the University of Massachusetts, Amherst, and his Master of Science in Physical Therapy from Simmons College.

16.     Dr. Velsmid began his career as physical therapist in 1995 at the Department of Veterans Affairs.

17.     Dr. Velsmid specializes in sports and outpatient orthopedics and has extensive experience in rehabilitation of high-level competitive athletes.

18.     Since starting Boston Sports Medicine, Dr. Velsmid and his team of clinicians have provided exceptional physical therapy care.

19.     Boston Sports Medicine's first location was at 556 Cambridge Street, Allston, Massachusetts which subsequently moved to 1 Braintree Street, Allston, Massachusetts.  By the opening of this first location, Dr. Velsmid had carefully researched and chosen his clinic name, "BOSTON SPORTS MEDICINE."

20.     Dr. Velsmid designed an accompanying athletic logo for his clinics.

4

21.     On October 19, 2004, Boston Sports Medicine, obtained a Massachusetts trademark registration for the mark, "BOSTON SPORTS MEDICINE" for physical therapy, muscular therapy, and message therapy medical care, (MA State Reg. No:   64931).  A true and accurate copy of Boston Sports Medicine's mark Massachusetts Registration is attached hereto as <u>Exhibit B</u>.

22.     The Massachusetts registered trademark was renewed on September 3, 2014.  A true and accurate copy of Boston Sports Medicine's mark Massachusetts Registration is attached hereto as <u>Exhibit C</u>.  On July 14, 2014, Boston Sports Medicine, Inc. of which Dr. Velsmid is the President, filed an application for registration of the service mark "Boston Sports Medicine" with the United States Patent and Trademark Office ("USPTO").

23.     On June 2, 2015, the USPTO granted registration of "Boston Sports Medicine" on the Principal Register, with registration number 4,746,612 for medical, physical rehabilitation and physical therapy services, in Class 044 (hereinafter referred to as the "Boston Sports Medicine Mark").  A true and accurate copy of the Boston Sports Medicine Mark and registration is attached hereto as <u>Exhibit D</u>.

24.     Boston Sports Medicine has continuously used the Boston Sports Medicine Mark in connection with and to identify its services, in order to distinguish its services from the services offered by other companies.

25.     Boston Sports Medicine's continuous use of the Boston Sports Medicine Mark has conveyed and continues to convey an immediate idea and source recognition of the Boston Sports Medicine clinics that have been created, and the high quality of service Boston Sports Medicine provides, such that the Boston Sports Medicine Mark has acquired secondary meaning.

26.     For decades, Boston Sports Medicine has made a substantial investment in the creation of the Boston Sports Medicine company website and brick and mortar establishments, as well as holding out the Boston Sports Medicine Mark for source identification.

27.     In the promotion and protection of the Boston Sports Medicine Mark, Boston Sports Medicine considers the Mark among its most important and valuable assets.

28.     Boston Sports Medicine possesses the exclusive right, both in Massachusetts and across the United States, to among other things, exploit commercially the Boston Sports Medicine Mark and to bar use by any third parties of any confusingly similar marks or trade names.

29.     Through extensive use, continuous promotion, and prominent recognition by noteworthy publications, the Boston Sports Medicine Mark has come to be associated with Boston Sports Medicine and to identify Boston Sports Medicine as the source of the goods and services offered in connection with the Boston Sports Medicine Mark.

30.     Those who define the market and potential market have come to recognize the Boston Sports Medicine Mark for the physical rehabilitation and physical therapy services offered by Boston Sports Medicine and Boston Sports Medicine reserves the right and is entitled to protection for medical services under its Mark.

31.     Boston Sports Medicine's use and promotion of the Boston Sports Medicine Mark has proven enormously successful as Boston Sports Medicine has created a loyal and growing following, together with a sterling medical reputation as exhibited by sources such as SportsMD, online customer reviews on Google, Yelp and other similar websites, and patients recognizing Boston Sports Medicine and highly recommending its services to others, as evinced by the growth of brick-and-mortar establishments and the web based following. Exhibit E.

32.     In or around June of 2014, Dr. Velsmid and the clinic director of Boston Sports Medicine, Dr. Erin Looney discovered that Dr. Thomas J. Gill, M.D. ("Gill") had opened BSMRI,

6

in Boston, Massachusetts.  Dr. Velsmid and Dr. Looney immediately realized that Boston Sports Medicine & Research Institute chose a virtually identical name for the clinic to that of Boston Sports Medicine, and thus an entity that infringes upon the Boston Sports Medicine Mark and unfairly competes with Boston Sports Medicine by using a confusingly similar name in the area where Boston Sports Medicine is known and uses the Boston Sports Medicine Mark.

33.     In or around June of 2014, Dr. Looney informed Dr. Velsmid that Boston Sports Medicine, received a fax Boston Sports Medicine & Research Institute. Exhibit F, ¶3.

34.     The "Boston Sports Medicine & Research Institute" name is strikingly similar and nearly identical to the Boston Sports Medicine Mark and incorporates the Boston Sports Medicine Mark in the entirety and thus there is little material difference in the sight, sound, and impression between the Boston Sports Medicine Mark and the counterfeit and greater than a decade later used Boston Sports Medicine & Research Institute term.

35.     In or around June of 2014, Dr. Velsmid discovered that Boston Sports Medicine & Research Institute had also registered the domain name www.bostonsportsmedicine.com to advertise and administer its services.

36.     Upon further investigation, Dr. Velsmid and his staff ascertained that Defendant Dr. Gill was the person behind Boston Sports Medicine & Research Institute, which was came as a shock considering Dr. Gill's prior relationship with and public knowledge of Boston Sports Medicine, as illustrated below.

37.     In a recent Uniform Domain-Name Dispute-Resolution Policy (hereinafter referred to as "UDRP") Internet Corporation for Assigned Names Proceeding (hereinafter referred to as "the ICANN Proceeding"), Dr. Gill stated that he had never heard of Boston Sports Medicine when he decided to register and utilize his domain, www.bostonsportsmedicine.com, despite the fact that the entirety of the domain includes the Boston Sports Medicine Mark.  Exhibit G, ¶25.

38.     Despite Dr. Gill's assertions, Boston Sports Medicine was known to the orthopedic department at Saint Elizabeth's Hospital in Boston, MA (hereinafter known as "St. Elizabeth's") as early as 2001. Exhibit F, ¶38.

39.     Specifically, Boston Sports Medicine regularly referred cases to attending physicians at St. Elizabeth's, including Defendant Dr. Gill Exhibit F, ¶38 - 41.

40.     To date, Dr. Gill still maintains a relationship with St. Elizabeth's as the Chairman of the Department of Orthopedics at St. Elizabeth's Medical Center. Exhibit G, ¶5.

41.     As far back as 2001, as part of the standard of care and   interdisciplinary communication, Boston Sports Medicine regularly submitted hundreds of copies of medical records to medical doctors, including Dr. Gill. [Annex 5, at ¶11 from ICANN].  At all applicable times during these written communications, the Boston Sports Medicine mark was prominently displayed on the medical records of the referred patients. Exhibit F, ¶¶ 39, 41.

42.     Of highest import, upon receiving referrals from Boston Sports Medicine on numerous occasions, Dr. Gill's signed as attending physician on numerous records which displayed the name Boston Sports Medicine. Exhibit F, ¶ 44.

43.     At the ICANN, in his declaration Defendant avowed that although "[Boston Sports Medicine] may have referred a few patients to hospitals where I have worked before 2014, I never understood that name to be more than a descriptive phrase to identify a sports medicine services offered in the Boston Metropolitan area." Exhibit G, ¶25.

44.     Despite the fact that Dr Gill admitted to recognizing the name Boston Sports Medicine, and deemed the name Boston Sports Medicine to be nothing more than a "descriptive phrase," Defendant then decided to use what he deemed a "descriptive phrase" as the hallmark for his new business persona.

45.    In an attempt to bolster these false statements (not to mention clean up his public image as discussed herein) Dr. Gill lodged a self-aggrandizing paragraph in his affidavit to illustrate his acclaim to the ICAAN as follows:

46.    Dr. Gill has been recognized most every year since 2014 as one of the "Best Doctors in America" by Best Doctors, Inc. and one of the "Top Doctors in Boston" in the field of "Sports Medicine" by Boston Magazine. Dr. Gill has served as the primary physician for the New England Patriots, Boston Red Sox, Boston Breakers, Boston Ballet, and as the Boston-area Medical Director for men's and women's World Cup and CONCACAF Gold Cup. Exhibit H.

47.    Nevertheless, representing himself as such a sophisticated entity contradicts Dr. Gill's claim of ignorance of Boston Sports Medicine's Trademark and his negligence in establishing a business without first researching the copyright of the name.

48.    Upon information and belief, as these statements should have no bearing on an ICANN proceeding, it appears Dr. Gill listed all of these accomplishments in an attempt to render himself an esteemed physician above reproach and sway the ICANN Board from turning over his domain by creating a "he said she said" battle, out of the hands on the ICANN.

49.    In reality, Dr. Gill's activities are anything but above board as Dr. Gill has been dispelled form numerous positions beginning in 2011 and culminating most interestingly in 2014, the year he "created" Boston Sports Medicine and Research Institute.

50.    Thus, it appears Dr. Gill neglected not only to comprehend his fall from fame, but also the public nature thereof which was likely the motivation for Dr. Gill to hijack the Boston Sports Medicine name and reinvent himself.

51.    Dr. Gill further notes his various roles serving as the primary physician for multiple Boston sports franchises, most notably, Head Team Physician for the New England Patriots,

Medical Director for the Boston Red Sox, and Team Physician for the Boston Bruins. Exhibit G, ¶11.

52.     However, Dr. Gill and Defendant fail to mention why most, if not all of these accolades came to a halt by 2014, which led up to this fall from grace are as follows.

53.     Despite Dr. Gill's championing his accolades at the ICANN, DR. Gill's acclaim began to decline in 2011.

54.     Upon information and belief and according to public information, in 2011, the Boston Red Sox released Dr. Gill due to friction with players, front office and other medical staff. Exhibit I.

55.     Upon information and belief and according to public information, Dr. Gill also fell out of favor with New England Patriots tight end Rob Gronkowski in 2012 due to a surgery performed on Gronkowski's left forearm, wherein the failed surgery was said to have created the need for three more surgical procedures. Exhibit J.

56.     A review of Dr. Gill's Affidavit at the ICANN Proceeding illustrates a sharp decrease in speaking engagements at industry and institutional conferences in comparison to prior years. Exhibit G. See also Exhibit K.

57.     Upon information and belief, additionally in 2014, Dr Gill, who had been at the center of numerous medical controversies with the Red Sox and Patriots over recent years, stepped down from his position with the Patriots. Exhibit L

58.     It appears Dr. Gill and Defendant attempted to distract the Panel from the dispute at hand in providing his resume of prestigious positions.  However, at the ICANN, Dr. Gill's Affidavit was silent regarding the fact that these speaking engagements and lofty positions were no longer existent by 2014.  Exhibit K.

**Initial Evidence of Confusion and Actual Confusion**

59.     Addressing issues regarding consumer confusion between Plaintiff's Boston Sports Medicine Federal and State trademark registrations and Defendants infringing use of the term Boston Sports Medicine & Research Institute, on or around February 2015, while browsing the BSMRI website, Dr. Velsmid recognized that BSMRI offered physical therapy services. Specifically, the Boston Sports Medicine & Research Institute website possessed a "Physical Therapy" tab which featured numerous physical therapy protocols.   A true and accurate copy of the Boston Sports Medicine & Research Institute website, showing the "Physical Therapy" tab, in February 2015 is attached hereto as Exhibit M.

60.     Further, upon clicking the "Physical Therapy" tab, Dr. Velsmid was directed to a more specific Physical Therapy webpage, wherein physical therapy services were advertised.  A true and accurate copy of the Boston Sports Medicine & Research Institute Physical Therapy webpage in February 2015 is attached hereto as Exhibit N.

61.     Having learned of the extent of the BSMRI infringement on the Boston Sports Medicine Mark, along with the actual customer confusion caused by Defendants' infringement, (discussed herein below), Boston Sports Medicine served a Cease-and-Desist letter upon BSMRI and Dr. Gill on July 6, 2015.  A true and accurate copy of this July 6, 2015 letter is attached hereto as Exhibit O.

62.     This initial Cease and Desist letter expressly furnished formal notice to Defendants that Boston Sports Medicine was a Federally and State registered mark and that Defendants were infringing the mark.  The letter additionally highlighted the customer confusion that the name Boston Sports Medicine & Research Institute was causing and would continue to cause, and placed Defendants on notice of Boston Sports Medicine's intention to enforce the Boston Sports Medicine Mark.

63.     Additionally, this initial Cease and Desist letter requested that Defendant provide written assurances by July 15, 2015 that Defendant cease and desist from using the name Boston Sports Medicine and to immediately transfer and assign any domain names that consist of the Boston Sports Medicine Mark, including, without limitation, the www.bostonsportsmedicine.com domain name (hereinafter "Disputed Domain").

64.     On July 27, 2015, Defendant responded to the initial Cease and Desist letter. A true and accurate copy of this July 27, 2015 response letter is attached hereto as Exhibit P.

65.     Defendant, *inter alia*, stated in its response that the use of the Boston Sports Medicine & Research Institute name will not cause confusion, mistake, or deception among consumers in the marketplace.  See Exhibit P.

66.     After receiving the response from Boston Sports Medicine & Research Institute, Dr. Velsmid continued to receive phone calls from confused consumers.

67.     On or around August of 2015, "JrEagleGirlsHockey" (@jr_eagle_girls on Twitter) mistakenly sent a "tweet" to the Twitter handle of Boston Sports Medicine, (@BostonSportsMed) thanking Dr. Gill for helping a patient recover from an injury.  Additionally, several other individuals favorited this Tweet and "re-tweeted" it ("kaleigh donnelly", "Gayle Norcross", "Jake peters") thanking Dr. Gill.   A true and accurate copy of a screenshot of the Tweet to the Twitter handle of Boston Sports Medicine, is attached hereto as Exhibit Q.

68.     On or about August of 2015, while once again browsing the Boston Sports Medicine & Research Institute website, Dr. Velsmid noticed that the "Physical Therapy" tab was removed from the website and replaced with a "Rehab Protocols" tab.  The new tab illustrated the exact same list of protocols as the "Physical Therapy" tab but was now renamed to "Rehab Protocols."  Furthermore, despite the curious removal of the tab, Defendant continued to offer physical therapy services as evidenced by their "Important Contact Information."  A true and

accurate copy of the Boston Sports Medicine & Research Institute website on August 2015, is attached hereto as Exhibit R.

69.     Within the same time period, on numerous occasions, employees of Boston Sports Medicine, who were attending industry conferences wearing Boston Sports Medicine shirts, were approached by unknown attendees asking if those employees of Boston Sports Medicine were under the employ for Dr. Gill.

70.     Boston Sports Medicine sent Defendant a second Cease and Desist letter on September 29, 2015, that reiterated the demand that Defendant discontinue its infringing and deceptive conduct. This second Cease and Desist letter also informed Defendant of the specific instances of consumer confusion.  A true and accurate copy of this September 29, 2015 Cease and Desist letter is attached hereto as Exhibit S.

71.     Boston Sports Medicine also reasserted that, although Defendant claimed that the services offered by the two companies were substantially different, both Boston Sports Medicine and Defendant offer physical therapy and post-surgical rehabilitation and recovery, as well as preoperative services.

72.     On October 1, 2015 Dr. Velsmid was notified by patient J*** G**** ("G****") that G**** had been referred to Dr. Velsmid by another patient, D**** S**** ("S****"), and that upon trying to contact Dr. Velsmid, G**** experienced difficulty trying to locate Dr. Velsmid because he was confused with Boston Sports Medicine & Research Institute.  G**** needed to re-contact S**** in order to gain clarification on which Boston Sports Medicine to contact. Exhibit F, ¶¶9,11.

73.     On November 5, 2015, Dr. Velsmid was also notified by one of his employees, Michelle Perry ("Perry") that while attending a conference, Perry was approached by a representative of DONJOY/DJO Global who believed they were affiliated with Boston Sports

Medicine & Research Institute.  Perry clarified that she in fact was associated with Boston Sports Medicine and not Boston Sports Medicine & Research Institute.  Perry then reported this incident to Dr. Velsmid.  See Affidavit of Dr. Velsmid at ¶ 6, attached hereto as Exhibit F, ¶12.

74.     Defendant responded to the second Cease and Desist letter on November 12, 2015, and reasserted that there was no evidence of actual confusion and that consumers are not likely to be confused.  A true and accurate copy of this November 12, 2015, Cease and Desist letter is attached hereto as Exhibit T.

75.     The inquiries Dr. Velsmid received regarding Boston Sports Medicine & Research Institute make it clear that public confusion has already arisen as to whether Boston Sports Medicine & Research Institute is affiliated with or sponsored by Boston Sports Medicine.

76.     To the extent that these and other prospective customers for whom Boston Sports Medicine and Boston Sports Medicine & Research Institute compete in the same market and the same area mistakenly believe that Boston Sports Medicine & Research Institute is authorized, licensed, endorsed, or sponsored by Boston Sports Medicine, and owing to the confusion created by offering virtually identical services, there is a grave risk of tarnishment to the Boston Sports Medicine Mark and Boston Sports Medicine itself.

77.     It is indisputable that the service offered and redirected to codefendants by Defendant are identical to the services offered under the Boston Sports Medicine Mark as both clinics offer physical therapy and rehabilitation services.

78.     Thus, on February 1, 2016, Boston Sports Medicine filed a Federal Court complaint (hereinafter "Federal Complaint") in the United States District Court, District of Massachusetts, for, inter alia, trademark infringement.  Exhibit U.

79.     Boston Sports Medicine attempted to settle the dispute through a meeting with Defendants, in the company of their respective counsels. Exhibit F, ¶14.

80.     Subsequent to this meeting, Boston Sports Medicine and Defendants engaged in discussions and meetings, sans counsel, and brokered an agreement despite failing to generate a written memorialization of the terms. Exhibit F, ¶15.

81.     The parameters of the agreement, and particularly Defendants commitment to conform and cease infringement, in consideration for dismissal of the Federal Complaint, were Exhibit F, ¶¶14, 42, 43, See also Exhibit D attached to Exhibit F.

82.     Under said agreement, Defendant was bound to cease using the Disputed Domain entirely after a reasonable period for changeover to a new domain and identity; was bound to his offer to prominently feature Boston Sports Medicine as a "preferred provider" of physical therapy services on the new domain; and increase referrals to Boston Sports Medicine as recompense for years of willful and illicit infringement. Exhibit F, ¶16.

83.     In fact, contrary Dr. Gill's statements at the ICANN, in or around Sept 2017,  Dr. Velsmid received a telephone message from Dr. Gill stating the following: "… I wanted to know if we could talk about next steps on a couple of fronts, you and I partnering, my atty has been [asking] me about what we're going to do with the lawsuit … if you're comfortable with it, I want to know what makes the most sense for you, can we get something in writing, if you want to postpone it or put off or cancel the charges now and you and I can work towards changing the name once BOI is built or you and I can partner more closely and you run PT over there and all the other partnerships we talked about that would be great to, give me a shout."

84.     Additionally, a series of cellular text messages between Dr. Gill and Dr. Velsmid occurring from Jan 3, 2017 to April 4, 2018 clearly illustrates the formation of the contractual agreement between the parties, and performance thereunder. (Exhibit CC).

85.     Within the text line, again contrary to Dr. Gill's sworn statements at the ICANN, Dr. Gill consummated the contractual agreement through performance as Dr. Gill extended an invitation to work with, and actually did work with, the Clinic Director of Boston Sports Medicine at St. Elizabeth's Bone and Joint Center, stating as follows: "I'm pretty sure I'm doing clinic [at St. Elizabeth's] on Monday. Let's plan to have your therapist [sic] join me to get started on our plan." (Exhibit CC).

86.     Moreover, the Clinic Director of Boston Sports Medicine coordinated the collaboration with Dr. Gill through Dr. Jennifer Luz of St. Elizabeth's and in line with coordination effort, the Clinic Director of Boston Sports Medicine treated patients with Dr. Gill as evinced by Dr. Gills text statement as follows: "[The Clinic Director of Boston Sports Medicine] was actually here…. He's a great guy and a big help so far." (Exhibit CC).

87.     Dr. Gill and Dr. Velsmid then set out scheduling cotreatment visits for the Clinic Director of Boston Sports Medicine to work with Dr. Gill and other physicians at St. Elizabeth's. (Exhibit CC).

88.     In furtherance of performance, Dr. Gill scheduled a meeting between so far as to state the following: "Also, we are setting up a meeting with Andrew, [Dr. Velsmid], the new president of [St Elizabeth's] and the chief nurse about having [Dr. Velsmid and BSM] take over [Physical Therapy] for [St Elizabeth's]." (Exhibit CC).

89.     The meeting between Boston Sports Medicine and St. Elizabeth officials occurred in the latter portion of 2017 and at the meeting discussions occurred toward creating a relationship

between Boston Sports Medicine and St. Elizabeth's, in conjunction with the ongoing contractual relationship between Boston Sports Medicine and Dr. Gill (which Dr. Gill swore never existed in his affidavit at the ICANN).

90.     Thus, on December 1, 2017, in light of the contractual agreement with Dr. Gill, Dr. Gill's performance under the agreement and Dr. Gill's originating meetings for Boston Sports Medicine with influential leaders in the industry, Boston Sports Medicine filed a Stipulation of Dismissal in the Federal Court without prejudice and Boston Sports Medicine and Defendant agreed to move forward as professional associates. Exhibit F, ¶17.

91.     In early 2018, nearly simultaneous to Boston Sports Medicine's dismissal of the Federal action, the complexion of the relationship between the parties began to change and it became evident to Boston Sports Medicine that something was amiss as Dr. Velsmid's overtures to St. Elizabeth fell on deaf eyes and the relationship never materialized.

92.     Additionally, Boston Sports Medicine's agreement to co-treat patients with Dr. Gill at St. Elizabeth's dwindled as representatives of Boston Sports Medicine went from being treated as major assets, to be treated like they were getting in the way, and eventually were told Boston Sports Medicine employees could no longer treat at St. Elizabeth's without going through extensive training, the type of which was never required prior to Boston Sports Medicine's dismissal of the Federal action.

93.     Moreover, one representative of Boston Sports Medicine spent one hour with a doctor at St. Elizabeth's and was approached by a member of administration and asked to leave.

94.     As Boston Sports Medicine had developed a strong relationship with two of the Doctors at St. Elizbeth's and were receiving patient referrals, Boston Sports Medicine decided not to push the issue at St. Elizbeth's.

95.     Also, despite the fact that Boston Sports Medicine developed strong relationships with numerous doctors in the year or so following, Boston Sports Medicine received very few of the referrals promised by Dr. Gill from the newly opened Wellesley facility – this is not surprising as it was later discovered that Dr. Gill had hired his own physical therapist, wholly contrary to statements made prior to Boston Sports Medicine's dismissal of the Federal action, which led Dr. Velsmid to believe Boston Sports Medicine would be the dedicated physical therapist at the Wellesley facility.

96.     It became apparent to Boston Sports Medicine that the agreement, and the performance under the agreement, were feigned in order to coerce Boston Sports Medicine to dismiss the Federal action, particularly as Boston Sports Medicine continually initiated contact with Dr. Gill and followed through on the relationship, only to be dodged and deceived by Dr. Gill at every turn, and all the while Dr. Gill used the infringing BSMRI name as a launch pad for future ventures.

97.     Therefore, almost in lockstep with the filing of the Stipulation of Dismissal in the Federal action, the stream of referrals from Dr. Gill, and Dr. Gill's affiliated agents (St. Elizabeth's Hospital and Steward Medical Group) slowly began to dry up.

98.     During the period of time directly subsequent to the agreement, Boston Sports Medicine accepted and did not question the veracity of Defendants' representations that Defendants were complying with the directives of the agreement which included moving away from use of the Disputed Domain and referring enough patients to Boston Sports Medicine to compensate for Defendants' years of willful infringement of the Boston Sports Medicine Mark.

**Continued and Recent Evidence of Confusion and Actual Confusion**

99.     Despite the overwhelming evidence produced at the ICANN, and Defendant's efforts to settle the Federal court action of 2015-2017 as illustrated below, Defendants continue to assert that Defendants did not offer, and do not currently offer, services similar to those offered by Boston Sports Medicine and that a sophisticated consumer carefully choosing medical care would not be confused by the similarity in the names Boston Sports Medicine and Boston Sports Medicine & Research Institute.  Exhibit V.

100.    However, despite numerous attempts to cultivate the relationship promised by Dr. Gill, recently Dr. Velsmid made the realization that Defendants had feigned compliance with the agreement as instead of moving away from use of the Disputed Domain, Defendants have continued use of the Disputed Domain. Exhibit F, ¶19.

101.    Upon recognition of being hoodwinked by Dr. Gills' specious activities, Dr. Velsmid and the Boston Sports Medicine staff began to study referral trends and realized the once numerous referrals coming from St. Elizabeth's Hospital, had begun to decline.  Moreover, Boston Sports Medicine has identified the initiation of the decline in referrals to the exact period when Boston Sports Medicine dismissed the Federal Complaint against Defendant. Exhibit F, ¶¶20, 21; See also Exhibit W.

102.    Defendants' website currently associated with the Disputed Domain offers, and/or redirects the consumer public to, co-defendants directly competing services to those of Boston Sports Medicine.  Even more telling, Defendants originally worked under the umbrella of St. Elizabeth's, and thus the connection between the decline in referrals at St. Elizabeth's and settlement of the initial 2015-2017 action is clear.

103.    Upon discovering the dearth of promised referrals from Defendants, Boston Sports Medicine reached out to Defendants in an attempt to investigate the low volume of patient referrals and to prompt Defendants in an attempt to investigate the low volume of patient referrals and to prompt Defendants to increase the number of referrals as agreed upon in the settlement upon which dismissal of the Federal Complaint was predicated. Exhibit F, ¶22.

104.    In return, Boston Sports Medicine received a somewhat vexing response as Defendants requested some business cards and brochures from Boston Sports Medicine for hand out to his patients.  Upon receiving this curious response, Boston Sports Medicine realized that they had apparently fallen from the ranks of "preferred provider" of physical therapy services and was instead an entity of no further value. Exhibit F, ¶¶23, 24; see also Exhibit X.

105.    Boston Sports Medicine's review of the contents of Defendants' web site verifies that, and more, as Boston Sports Medicine was nowhere to be found on that site, let alone in a physical therapy referral environment.  What's more, there is no mention of Boston Sports Medicine as a "preferred provider" of physical therapy services and instead other providers are mentioned in utter defiance of the agreement. Exhibit F, ¶25.

106.    In response to the continuous and ongoing consumer confusion, on or around June 4, 2021, Boston Sports Medicine submitted a complaint ("ICANN Complaint") for decision in accordance with the Uniform Domain Name Dispute Resolution Policy established by the Internet Corporation for Assigned Names and Numbers ("ICANN").  Boston Sports Medicine submitted the ICANN Complaint through the FORUM Arbitration to be decided in front of a single Panel. A true and accurate copy of the ICANN Complaint is attached hereto as Exhibit Y.

107.    On June 9, 2021, the FORUM served Defendants the ICANN Complaint, all Annexes, and a Written Notice of Complaint and Commencement of Administrative Proceeding.

On July 6, 2021, Defendants filed their response to the ICANN Complaint. A true and accurate copy of Defendants' response is attached hereto as Exhibit H.

108.    In Defendant'\s' response, Defendants relied heavily on Dr. Gill's extensive experience working with various prestigious institutions from 1998 to 2014. These include various positions with Massachusetts General Hospital and their affiliates. Exhibit G.

109.    On July 12, 2021, pursuant to Boston Sports Medicine's request for a single-member Panel, Gerald M. Levine was appointed as the Panelist by the FORUM.

110.    On July 19, 2021, Panelist, Gerald M. Levine provided Boston Sports Medicine and Defendants with a decision, and unfortunately denied Boston Sports Medicine their claim against Defendants. A true and accurate copy of the UDRP Final Decision is attached hereto as Exhibit Z.

111.    Panelist, Gerald M. Levine stated that because the "parties are in disagreement over an alleged material fact a UDRP Panel is in no position to rule on the issue" and thus "can only be resolved by a court of competent jurisdiction." Exhibit Z.

112.    Boston Sports Medicine continues to be affected by the consumer confusion caused by Defendants. Its offices have experienced a steady volume of confused patients and recently there has been an uptick in confused and angry customers. Many of these customers have used the telephone numbers listed on the respective web sites and are getting directed to the wrong entities and this has caused a great disruption to Boston Sports Medicine's business and consumes resources, including administrative time and answering service expenses, not to mention injury to the reputation of Boston Sports Medicine.

113.    On or around July 1, 2021, Med Pro Solutions, Boston Sports Medicine's billing consultants, informed Dr. Velsmid that they received a check on June 28, 2021 made out to

Defendant by the City of Boston that was delivered and deposited in Boston Sports Medicine's account. Exhibit AA.

114.    As consumer confusion continues, on or around July 22, 2021, an individual, and to Boston Sports Medicine's knowledge a patient of Defendants, arrived to Boston Sports Medicine's facilities for their 9:45 a.m. *appointment*.  Boston Sports Medicine had no record of this patient and had to explain Defendants were different from Boston Sports Medicine.

115.    The similar, and arguably identical services offered by Defendants on Defendants' website under the BOSTON SPORTS MEDICINE mark and Disputed Domain have caused and continue to cause confusion not only among consumers, but to the public marketplace as a whole as both Boston Sports Medicine and Defendants offer physical therapy and rehabilitation services.

116.    On July 27, 2021, Defendants sent a follow up letter, again re-emphasizing Dr. Gill's extensive work history, and stating the *apparent* lack of consumer confusion due to differing goods and services provided by Boston Sports Medicine and Defendants. Exhibit V.

117.    Despite Defendants' blatant mischaracterization of the consumer confusion, on July 28, 2021, a check from the City of Boston, addressed to Boston Sports Medicine & Research Institute, was received by Boston Sports Medicine and mistakenly deposited, and accepted for deposit in a bank account.  Thus, this one check City of Boston not only confused the City of Boston and a Federally licensed banking institution, but also confused Plaintiff Boston Sports Medicine and similar confusion with checks happens on a regular basis. Exhibit BB.

118.    On October 8, 2021, another example of patient consumer confusion, a patient from New Hampshire called Boston Sports Medicine and was frustrated that he had not received a call back in a week. The call ended up being a referral to "Boston Sports Medicine" for shoulder surgery, which made no sense as Plaintiff does not have any clinics in New Hampshire and does

not perform surgery. Clearly, the patient, as well as the referring physician, were confused as surgery is Dr. Gill's specialty and clearly the patient was a referral for BSMRI.

119.    On October 20, it was discovered that another check from the City of Boston, addressed to Boston Sports Medicine & Research Institute, was received by Boston Sports Medicine and mistakenly deposited, and accepted for deposit in a bank account.

120.    Defendants have never been authorized, licensed, or granted permission to use the Boston Sports Medicine Mark in connection with medical, physical rehabilitation and physical therapy services.

121.    Defendants' use of the Boston Sports Medicine Mark has caused, presently causes, and is will clearly to continue to cause further confusion among consumers and to deceive consumers as to the source, quality, and nature of Defendants' goods and services.

122.    Moreover, Defendants are unabashed regarding usage of the Boston Sports Medicine Mark alone as the logo on the BSMRI website https://www.bostonsportsmedicine.com/ features use of "BOSTON SPORTS MEDICINE" alone in large font in the identical shade of blue utilized by Boston Sports Medicine as follows:



123.    Thus, with express knowledge as to Boston Sports Medicine's trademark rights, Defendants continue to use the confusing name "Boston Sports Medicine & Research

Institute" they selected in an attempt to cause confusion in the marketplace and capitalize on the goodwill and reputation that has been developed by and is associated with "Boston Sports Medicine."

124.    Defendants' misappropriation of Boston Sport Medicine's name, its infringement of the Boston Sports Medicine Mark, and its unfair competition, has caused and continues to cause significant damages and irreparable harm to Boston Sports Medicine.

## <u>COUNT I</u>

### (Federal Trademark Infringement)
### Lanham Act § 32, 15 U.S.C. § 1114(1)(a), § 1116

125.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 124 as if expressly and fully set forth herein.

126.    Boston Sports Medicine is the legal owner of the Boston Sports Medicine Mark, has not abandoned the Boston Sports Medicine Mark since its first use, and has been, and continues to be, in continuous use in interstate and intrastate commerce.

127.    Defendants' unauthorized use, reproduction, copying or colorable imitations of the Boston Sports Medicine Mark, as explained above, and as done by Boston Sports Medicine & Research Institute, has caused and is likely to continue to cause confusion, mistake, and/or deception among consumers as to the source, quality, and/or nature of Defendants' goods and services.

128.    Defendants' use, reproduction, copying or colorable imitation of the Boston Sports Medicine Mark also likely creates the misconception among consumers that Boston Sports Medicine somehow ratifies or authorizes Defendants' infringing use of the Boston Sports Medicine Mark and/or that Boston Sports Medicine is affiliated in some manner with Defendants' business, when such is not the case.

24

129.    Boston Sports Medicine did not give and has not given Defendants permission to use the Boston Sports Medicine Mark and Boston Sports Medicine, as owner of the Boston Sports Medicine Mark, objects to Defendants' past, and continued, infringing use of the Boston Sports Medicine Mark and/or any confusingly similar derivations thereof.

130.    While Boston Sports Medicine has notified Defendants on several occasions that its use of the Boston Sports Medicine Mark and/or any confusingly similar derivations thereof is unauthorized, Defendants continue to use and extensively exploit, for its own commercial advantage, the Boston Sports Medicine Mark, to the detriment of Boston Sports Medicine as well as the consuming public.

131.    Because Defendants' continued use of the Boston Sports Medicine Mark, and/or any confusingly similar derivations thereof, prevents Boston Sports Medicine from exercising exclusive control over its intellectual property rights and because Defendants' continued use of the Boston Sports Medicine Mark, and/or any confusingly similar derivations thereof, is likely to continue to cause confusion, mistake, and/or deception as to the source, affiliation, or sponsorship of the goods and services that Defendants advertise, promote, and/or sell through its infringing use of the Boston Sports Medicine Mark, Boston Sports Medicine lacks an adequate remedy at law.

132.    Unless temporary, preliminary and permanent injunctions are issued enjoining Defendants from any continuing or future infringing use of the Boston Sports Medicine Mark, Boston Sports Medicine will continue to sustain irreparable damage.  Defendants have already proven it is a willful infringer who has complete disregard of the intellectual property rights of Boston Sports Medicine.

133.    Pursuant to 15 U.S.C., § 1116(a), Boston Sports Medicine is entitled to an order enjoining Defendants from using the Boston Sports Medicine Mark to advertise, market, and/or sell Defendants' goods or services.

134.    As a direct and proximate cause of Defendants' infringing conduct, Boston Sports Medicine has been damaged and will continue to be damaged. Pursuant to 15 U.S.C., § 1117(a), Boston Sports Medicine is entitled to an order requiring Defendant to account to it for any and all profits and other ill-gotten gains Defendants derived from its unauthorized and infringing use of the Boston Sports Medicine Mark, as detailed herein, and to an order awarding all damages sustained by Boston Sports Medicine by reason of Defendants' infringing conduct.

135.    As evidenced by, *inter alia*, Defendant's refusal to cease further use of the Boston Sports Medicine Mark after receiving notice of Boston Sports Medicine's objections to Defendants' infringement of the Boston Sports Medicine Mark, Defendant's conduct was and continues to be intentional and in conscious disregard of Boston Sports Medicine's rights. Boston Sports Medicine, therefore, is entitled to an award of treble damages and/or enhanced profits from Defendants.

## COUNT II

### (Federal Unfair Competition and False Advertising— 15 U.S.C., §1125(a))

136.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 135 as if expressly and fully set forth herein.

137.    Boston Sports Medicine is the legal owner of the Boston Sports Medicine Mark, has not abandoned the Boston Sports Medicine Mark since its first use, and the Boston Sports Medicine Mark has been, and remains in continuous use.

138.   Despite knowledge of Boston Sports Medicine's ownership interests in the Boston Sports Medicine Mark, Defendants have made, and continues to make, use in commerce of the Boston Sports Medicine Mark and/or any confusingly similar derivations thereof without Boston Sports Medicine's permission.

139.   Defendants' unauthorized use of the Boston Sports Medicine Mark creates a false association between Defendants and Boston Sports Medicine.

140.   Defendants' unauthorized infringing use of the Boston Sports Medicine Mark and/or any confusingly similar derivations thereof also tends to cause confusion, mistake, and/or deception among consumers as to the source, quality, and nature of Defendants' goods and services.

141.   Defendants have engaged in fraudulent business practices, false advertising, and unfair competition by using the Boston Sports Medicine Mark and/or any confusingly similar derivations thereof, associated goodwill, and other intangible rights of Boston Sports Medicine without permission in an attempt to pass off Defendants' goods as coming from, being sponsored by, and/or affiliated with Boston Sports Medicine, when such is not the case.

142.   Defendants' use of the Boston Sports Medicine Mark and/or any confusingly similar derivations thereof, goodwill, and other intangible rights of Boston Sports Medicine is in direct violation of 15 U.S.C., § 1125(a) et seq., and represents false advertising and false designation of source entitling Boston Sports Medicine to all remedies available under the law.

143.   As a direct and proximate result of the foregoing conduct, Boston Sports Medicine is entitled to damages against Defendants, in an amount according to proof at trial, to a temporary, preliminary, and permanent injunction, and to any and all other relief the Court deems just and proper under the law.

## COUNT III

**(False Designation)**
**15 U.S.C. 1125(c))**

144.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 143 as if expressly and fully set forth herein.

145.    Defendants' use of the term Boston Sports Medicine is confusingly similar to Plaintiff's Boston Sports Medicine Mark and has the effect of associating Defendants or their services with Boston Sports Medicine in the minds of the purchasing public, thereby trading off the good will acquired by Plaintiff.

146.    Defendants operation of Boston Sports Medicine is likely to cause confusion or mistake or to deceive as to the affiliation, connection or association of Defendants with Plaintiff as to the origin, sponsorship or approval of Defendants' products and services by Plaintiff, entitling Plaintiff to relief under 15 U.S.C. § 1125(c).

147.    Plaintiff has been damaged by such conduct in an amount to be determined at trial.

## COUNT IV

**(Unlawful Domain Name Registration Pursuant to**
**Anti-Cybersquatting Consumer Protection Act)**
**(15 U.S.C. 1125(d))**

148.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 147 as if expressly and fully set forth herein.

149.    Upon information and belief, Defendants have a bad faith intent to profit from the registration and use of the Internet domain name bostonsportsmedicine.com by creating an

association with Plaintiff's famous Boston Sports Medicine trademark as to source or sponsorship.

150.    The second-level domain name portion of the bostonsportsmedicine.com Internet domain name is confusingly similar to, and dilutes the distinctive quality of, Plaintiff's famous Boston Sports Medicine trademark.

151.    Plaintiff has been damaged by Defendants' unlawful use of the bostonsportsmedicine.com domain name and will suffer irreparable harm.

152.    Defendants' acts, as aforesaid, are in violation of the Anticybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

153.    Plaintiff has no adequate remedy at law.


## COUNT V

### (Trademark Dilution)
### (15 U.S.C. 1125(c))

154.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 153 as if expressly and fully set forth herein.

155.    Plaintiff's Boston Sports Medicine trademark is a famous mark and had become famous prior to Defendants' first use of the Internet domain name and mark in conjunction with its tradename and goods and services offered to the public as alleged.

156.    Plaintiff's Boston Sports Medicine trademark is inherently distinctive to the public and the trade with respect to goods and services.

157.    By such wrongful acts, defendants have, and unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated

with Plaintiff's famous Boston Sports Medicine mark by diluting and blurring its distinctive quality.

158.    Defendants' aforementioned acts constitute willful dilution of Plaintiff's Boston Sports Medicine trademark in violation of the Federal Trademark Dilution Act, codified at Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).


## COUNT VI

**(Recovery of Profits, Damages, Costs and Attorneys Fees)**
**(15 U.S.C. § 1117 and § 1114)**

159.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 158 as if expressly and fully set forth herein.

160.    The actions of Defendants, as outlined above constitute exceptional circumstances upon which reasonable attorneys fees may be awarded to Plaintiff.

161.    The actions of Defendants in violating the trademark of Boston Sports Medicine have been malicious, fraudulent, willful and deliberate and as such merits the award of damages and attorneys fees under this statute.


## COUNT VII

**(Unfair Methods of Competition/Deceptive Acts and Practices)**
**(M.G.L. c. 93A, §§ 2 and 11)**

162.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 161 as if expressly and fully set forth herein.

163.    Defendants are engaged in the conduct of trade or commerce within the meaning of M.G.L. c. 93A.

164.    The foregoing conduct by Defendants constitutes a pattern of unfair, deceptive, and fraudulent acts and practices within the meaning of M.G.L. c. 93A in that Boston Sports Medicine is the legal owner of the Boston Sports Medicine Mark, has not abandoned the Boston Sports Medicine Mark since its first use, and the Boston Sports Medicine Mark has been, and continues to be, in continuous use.  Despite knowledge of Boston Sports Medicine's ownership interests in the Boston Sports Medicine Mark, Defendants have made, and intentionally continued to make, use in commerce of the Boston Sports Medicine Mark without Boston Sports Medicine's permission.

165.    Boston Sports Medicine never granted Defendants permission to use the Boston Sports Medicine Mark or any similar marks or to engage in the offending activities. After discovering Defendants' infringing use of the Boston Sports Medicine Mark, Boston Sports Medicine demanded that Defendants cease further use of the Boston Sports Medicine Mark. Defendant has refused to cease further use and continues, to this day, to misappropriate Boston Sports Medicine's rights in the Boston Sports Medicine Mark.

166.    Defendants have engaged in a pattern of unfair, deceptive, and fraudulent acts to enrich itself by misappropriating Boston Sports Medicine's exclusive rights to the Boston Sports Medicine Mark and using it for its own benefit.

167.    Defendants have engaged in fraudulent business practices, false advertising, and unfair competition by using the Boston Sports Medicine Mark, associated goodwill, and other intangible rights of Boston Sports Medicine, including but not limited to an improper attempt to pass off Defendants' services as coming from, being sponsored by, and/or affiliated with Boston Sports Medicine.

168.    Defendants' unauthorized use and intentional infringement of the Boston Sports Medicine Mark, as explained above, creates a false association between Defendants and

Boston Sports Medicine and is likely to cause confusion, mistake, and/or deception among consumers as to the source, quality, and/or nature of Defendants' goods and services.

169.    Boston Sports Medicine has been damaged and will continue to be damaged by Defendants' unlawful, unfair, and fraudulent and deceptive business practices as alleged herein.

170.    Boston Sports Medicine is entitled to a preliminary and permanent injunction enjoining Defendants from using the Boston Sports Medicine Mark to advertise, market, and/or sell Defendants' goods or services.  Defendants have profited from its activities and, unless its conduct is enjoined, Boston Sports Medicine will continue to suffer irreparable harm that cannot be adequately calculated or compensated by monetary damages. Accordingly, injunctive relief is proper pursuant to M.G.L. c. 93A, § 11.

171.    As a direct and proximate result of Defendants' conduct, Boston Sports Medicine has been harmed and is entitled to damages against Defendants in an amount according to proof at trial and to any and all other relief the Court deems just and proper under the law.

172.    Boston Sports Medicine is informed and believes, and thereon alleges, that Defendants' conduct was intentional, willful, wanton, malicious, and in conscious disregard of Boston Sports Medicine's rights, thereby justifying an award of three times its damages, together with reasonable attorneys' fees, pursuant to M.G.L. c. 93A, § 11.

## COUNT VIII

### (Trademark Infringement)
### (M.G.L. c. 110H)

173.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 172 as if expressly and fully set forth herein.

174.    Boston Sports Medicine owns and enjoys common law trademark rights which are superior to any rights Defendants may claim to any similar mark.

175.    As such, the Boston Sports Medicine Mark is entitled to protection under M.G.L. c. 110H, § 13.

176.    Defendants' unauthorized use of the Boston Sports Medicine Mark in Massachusetts was intended to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants with Boston Sports Medicine as to the origin, sponsorship, or approval of Defendants' goods.

177.    Defendants' infringement of the Boston Sports Medicine Mark has been willful, wanton, reckless, and done with full knowledge and disregard of Boston Sports Medicine's prior use and rights in its Mark.

178.    Defendants' unauthorized use of a mark confusingly similar to the Boston Sports Medicine Mark in Massachusetts has caused and will continue to cause substantial and irreparable injury to Boston Sports Medicine's business reputation unless Defendants' use of the Boston Sports Medicine Mark is enjoined by this Court.

179.    Boston Sports Medicine is entitled to injunctive relief to enjoin Defendants' further use of the Boston Sports Medicine Mark under M.G.L. c. 110H, § 3.

### COUNT IX

### (Massachusetts Common Law Trademark Infringement)

180.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 179 as if expressly and fully set forth herein.

181.    The Boston Sports Medicine Mark is the proprietary property of Boston Sports Medicine, which possesses certain common law trademark rights and protections in the Boston Sports Medicine Mark under the common law of the Commonwealth of Massachusetts.

182.    Defendants' unauthorized use and intentional infringement of the Boston Sports Medicine Mark, as explained above is likely to cause confusion, mistake, and/or deception among consumers as to the source, quality, and/or nature of Defendants' goods and services, thereby, committing common law trademark infringement.

183.    Defendants have engaged in unfair competition by using a mark confusingly similar to the Boston Sports Medicine Mark, associated goodwill, and other intangible rights of Boston Sports Medicine without permission in an attempt to pass off Defendants' services as coming from, being sponsored by, and/or affiliated with Boston Sports Medicine.

184.    Defendants' acts and conduct as set forth herein constitutes unfair competition, willful, unfair, and deceptive acts or practices within the Commonwealth of Massachusetts and violation of Massachusetts common law.

185.    Boston Sports Medicine never gave Defendants permission to use the Boston Sports Medicine Mark or any similar marks or engage in the offending activities. After discovering Defendants' infringing use of the Boston Sports Medicine Mark and/or any confusingly similar derivations thereof, Boston Sports Medicine demanded that Defendants cease further use of the Boston Sports Medicine Mark. Defendant, however, has refused to

cease further use and continues, to this day, to misappropriate Boston Sports Medicine's rights in the Boston Sports Medicine Mark.

186.    Boston Sports Medicine has been damaged and will continue to be damaged by Defendants' infringing activities.

187.    As a direct and proximate result of the foregoing conduct, Boston Sports Medicine is entitled to damages against Defendants in an amount that is subject to proof at trial, to a preliminary and permanent injunction, and to any and all other relief the Court deems just and proper under the law.

188.    Boston Sports Medicine is informed and believes, and thereon alleges, that Defendants' conduct was willful, wanton, malicious, and in conscious disregard of Boston Sports Medicine's rights, thereby justifying an award of punitive and/or exemplary damages in an amount according to proof at trial.

## COUNT XIII
### (Massachusetts Common Law Unfair Competition)

189.    Boston Sports Medicine repeats and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 188 as if expressly and fully set forth herein.

190.    Boston Sports Medicine is the legal owner of the Boston Sports Medicine Mark, has not abandoned the Boston Sports Medicine Mark since its first use, and the Boston Sports Medicine Mark has been, and continues to be, in continuous use. Despite knowledge of Boston Sports Medicine's ownership interests in the Boston Sports Medicine Mark, Defendants have made, and intentionally continues to make, use in commerce of the Boston Sports Medicine Mark without Boston Sports Medicine's permission.

191.    Defendants have engaged in a pattern of unfair, deceptive, and fraudulent acts to enrich itself by misappropriating Boston Sports Medicine's rights to the Boston Sports Medicine Mark and using them for its own benefit.

192.    Defendants' unauthorized use of the Boston Sports Medicine Mark creates a false association between Defendants and Boston Sports Medicine. Defendant's unauthorized use of the Boston Sports Medicine Mark also tends to cause confusion, mistake, and/or deception among consumers as to the source, quality, and nature of Defendants' goods and services.

193.    Defendants have engaged in fraudulent business practices, false advertising, and unfair competition by using the Boston Sports Medicine Mark and associated goodwill, without permission in an attempt to pass off Defendants' goods as coming from, being sponsored by, and/or affiliated with Boston Sports Medicine.

194.    Boston Sports Medicine has been damaged and will continue to be damaged by Defendants' unlawful, unfair, and/or fraudulent business practices and misleading advertising as alleged herein. Boston Sports Medicine, therefore, is entitled to a preliminary and permanent injunction enjoining Defendants from using the Boston Sports Medicine Mark to advertise, market, and/or sell Defendants' goods and services.

195.    As a direct and proximate result of the foregoing conduct, Boston Sports Medicine has been harmed and is entitled to damages against Defendants in an amount according to proof at trial and to any and all other relief the Court deems just and proper under the law.

196.    Boston Sports Medicine is informed and believes, and thereon alleges, that Defendants' conduct was willful, wanton, malicious, and in conscious disregard of Boston Sports Medicine's rights, thereby justifying an award of punitive and/or exemplary damages in an amount according to proof at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgement in its favor and against Defendants as to all Counts, together with the following relief:

A.      For a preliminary and permanent injunction that enjoins Defendants and their agents, affiliates, parent companies, subsidiaries, servants, employees, and all persons acting in privity or in concert with them, from, directly or indirectly.

(i)      Using the Boston Sports Medicine Mark or trade name in connection with Defendants' services, marketing, advertising, or promotional materials, or otherwise in connection with Defendants' business;

(ii)     Using confusingly similar variations of the Boston Sports Medicine Mark or trade name, specifically including but not limited to "Boston Sports Medicine & Research Institute," causing a likelihood of confusion, deception, and/or mistake as to the source, nature, and/or quality of Defendants' goods or services;

(iii)    Otherwise infringing upon the Boston Sports Medicine Mark or trade name; and,

(iv)     Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint.

B.      For an Order directing Defendants to file with this Court and serve on Boston Sports Medicine, within 10 days after service of an injunction, a written report, signed under oath, setting forth, in detail, the manner and form by which Defendant has complied with the injunction.

C.      For an Order that Defendants pay to Boston Sports Medicine compensatory damages for the injuries sustained by Boston Sports Medicine in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C., § 1117, M.G.L. c.

93A, and any other applicable law because of the willful and knowing unlawful acts as alleged herein.

D.     For an Order requiring Defendants to account for and pay over to Boston Sports Medicine all gains, profits, and advantages derived by them from the willful and knowing unlawful activities alleged herein pursuant to 15 U.S.C., § 1117, M.G.L. c. 110H, and any other applicable law.

E.     For an Order awarding Boston Sports Medicine its costs and attorneys' fees incurred in prosecuting this action.

F.     For an Order awarding Boston Sports Medicine pre- and post-judgment interest.

G.     For an Award awarding Boston Sports Medicine such further relief as the Court deems just and proper.


## JURY DEMAND

Plaintiff, Boston Sports Medicine, hereby demands a trial by jury as to all claims or issues so triable.


Plaintiff,
BOSTON SPORTS MEDICINE, INC.,
By its attorneys,

*/s/ Douglas F. Hartman*
Douglas F. Hartman, BBO# 642823
HARTMAN LAW, PC
10 Post Office Square, Suite 800 South
Boston, MA 02109
P: (617) 807-0091
F: (617) 507-8334
dhartman@hartmanlawpc.com