UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| BOSTON SPORTS MEDICINE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 21-cv-11945-DJC |
| BOSTON SPORTS MEDICINE & RESEARCH INSTITUTE, LLC, and DR. THOMAS J. GILL, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                              **July 25, 2022**

## I.  Introduction

Plaintiff Boston Sports Medicine, Inc. ("BSM") has filed this lawsuit against Defendants Boston Sports Medicine & Research Institute, LLC ("BSMRI") and Dr. Thomas Gill ("Gill") (collectively, "Defendants") alleging federal and state claims of trademark infringement and unfair competition (Counts I, VI, VII, VIII, IX and XIII), false association and false advertising (Count II), false designation (Count III), unlawful domain name registration (Count IV) and trademark dilution (Count V).[1]  D. 1.  Defendants have moved to dismiss for failure to state a claim upon which relief can be granted.  D. 16.  For the reasons stated below, the Court ALLOWS the motion in part and DENIES it in part.

---

[1] BSM asserts ten claims:  Counts I through IX and Count XIII.  See D. 1 ¶¶ 125–96.  The complaint omits Counts X, XI and XII.  See id.

1

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

**III.    Factual Background**

The following factual allegations are drawn from the complaint, D. 1, and accompanying documents and are accepted as true for purposes of resolving the motion to dismiss.

   **A.     Boston Sports Medicine, Inc.**

BSM provides physical therapy services at five locations in Eastern Massachusetts.  Id. ¶¶ 13–14. BSM claims state and federal trademark registrations for variations on the mark "Boston Sports Medicine" "for use in connection with a variety of goods and services in the field of rehabilitation and physical therapy."  Id. ¶¶ 1, 21–23.  In October 2004, BSM obtained a Massachusetts trademark registration for the "Boston Sports Medicine logo includ[ing] the name 'Boston Sports Medicine' integrated with the imagine of an athlete" and "[t]he name, Boston

2

Sports Medicine used separately from the logo." D. 1-2 at 2–3 (Massachusetts Registration No. 64931); D. 1 ¶ 21. BSM renewed its Massachusetts trademark registration in September 2014. D. 1-3 at 2–9; D. 1 ¶ 22.

In June 2015, the United States Patent and Trademark Office ("USPTO") granted BSM registration on the Principal Register of a mark "consist[ing] of an athlete kicking a ball and with the words 'Boston Sports Medicine' located in front of the athlete, the athlete in black, the words 'Boston' and 'Medicine' [in] teal, and the word 'Sports' [in] red." D. 1-4 at 2 (emphasis omitted) (USPTO Registration No. 4,746,612); D. 1 ¶ 23. The federal registration disclaimed "the exclusive right to use the phrase 'Sports Medicine'" "apart from the mark as shown." D. 1-4 at 2 (emphasis omitted). In October 2018, BSM registered the word mark "Boston Sports Medicine" on the USPTO's Supplemental Register. D. 1-25 at 20 (disclaiming exclusive right to use "Sports Medicine" apart from the mark). As alleged (and confirmed by counsel at the motion hearing), BSM's infringement claims against Defendants arise from their alleged infringement of the phrase "Boston Sports Medicine" as separate and apart from its protected design mark. See, e.g., D. 1 ¶ 34.

As alleged, BSM "has continuously used" its mark—including the phrase "Boston Sports Medicine"—"in connection with and to identify its services, in order to distinguish its services from the services offered by other companies." Id. ¶ 24. BSM allegedly has "made a substantial investment" in its company website and brick-and-mortar establishments and held out its mark for source identification. Id. ¶ 26; see id. ¶ 25 (alleging that the mark "has conveyed and continues to convey an immediate idea and source recognition of [BSM's clinics] and the high quality of service [BSM] provides"). BSM's mark allegedly has "come to be associated with [BSM] and to identify [BSM] as the source of the goods and services offered in connection with" the mark through

BSM's "extensive use, continuous promotion, and prominent recognition by noteworthy publications." Id. ¶ 29. As alleged, "[t]hose who define the market and potential market have come to recognize [BSM's mark] for the physical rehabilitation and physical therapy services offered by [BSM]." Id. ¶ 30; see id. ¶ 31 (describing BSM's "loyal and growing following" evinced by positive online customer reviews); D. 1-5 (collecting search results showing same).

In addition to its trademark registrations, BSM holds the domain "bostonsportsmed.com" on which it initially launched its website in or around June 2003. D. 1 ¶ 12.

### B. Defendants

As alleged, BSMRI offers surgical services as well as physical therapy and preoperative, post-surgical rehabilitation, and recovery services. See id. ¶¶ 71, 118. BSMRI began using the name "Boston Sports Medicine & Research Institute" in or around June 2014 and registered the domain "bostonsportsmedicine.com" the same year. Id. ¶¶ 32, 35; see D. 1-7 ¶ 26. BSMRI's website features the phrase "Boston Sports Medicine" in the same shade of blue used by BSM's logo. See D. 1 ¶ 122. Gill is BSMRI's founder and provides surgical services to patients. Id. ¶¶ 32, 49; see D. 1-7 ¶¶ 3, 5, 21.

## IV. Procedural History

BSM commenced this action on December 3, 2021. D. 1. Defendants have moved to dismiss for failure to state a claim upon which relief can be granted. D. 16. The Court heard the parties on the pending motion and took the matter under advisement. D. 26.

## V. Discussion

### A. Trademark Infringement and Unfair Competition (Counts I, VI–IX, XIII)

Defendants argue that BSM fails adequately to plead claims of trademark infringement and unfair competition because its mark is geographically descriptive and has not acquired secondary

meaning and, therefore, is not entitled to protection. D. 17 at 8–10.

To state a claim of federal trademark infringement, a plaintiff must establish that its mark is entitled to trademark protection and that the allegedly infringing conduct is likely to cause consumer confusion. Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008). "A court's inquiry into whether a term merits trademark protection starts with the classification of that term along the spectrum of 'distinctiveness.'" Boston Beer Co. P'ship v. Slesar Bros. Brewing Co., 9 F.3d 175, 180 (1st Cir. 1993). "At one end of the spectrum there are generic terms that have passed into common usage to identify a product, such as aspirin, and can never be protected." Id. (citations omitted). "In the middle there are so-called descriptive terms, such as a geographical term, which can be protected, but only if it has acquired 'secondary meaning' by which consumers associate it with a particular producer or source." Id. (citations omitted). A term is primarily geographically descriptive if it is "perceived by potential purchasers [as] describ[ing] the geographic origin of the goods." Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, 871 F.2d 590, 594–95 (6th Cir. 1989) (concluding that the term "Appalachian Log Structures" was a primarily geographically descriptive term); see Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 502 F.3d 504, 513 (6th Cir. 2007) (affirming district court's conclusion that "Leelanau Wine Cellars" was geographically descriptive). "At the other end of the spectrum, there are suggestive, arbitrary and fanciful terms that can be protected without proof of secondary meaning." Boston Beer Co., 9 F.3d at 180 (stating that such terms are considered "inherently distinctive" (citation omitted)). "Words which could not individually become a trademark may become one when taken together." Union Carbide Corp. v. Ever-Ready Inc., 531 F.2d 366, 379 (7th Cir. 1976).

"[T]he party seeking protection of a mark . . . bears the burden of proving that secondary meaning has attached," that is, "that a substantial portion of the consuming public associates those words specifically with [the party's] business." Boston Beer Co., 9 F.3d at 181–82. To determine whether a term has acquired secondary meaning, the Court considers, among other factors, "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." Id. at 182 (citations omitted); see Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab., Inc., 997 F. Supp. 2d 92, 103 (D. Mass. 2014) (stating that "[o]ther probative factors include media coverage, attempts to copy the mark, the size or prominence of the plaintiff's enterprise, and the product's or service's place in the market"). Whether a term has acquired secondary meaning is a question of fact, Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 15 (1st Cir. 2012), that "entails vigorous evidentiary requirements," Boston Beer Co., 9 F.3d at 181 (citation omitted).

As Defendants argue, D. 17 at 8, the phrase "Boston Sports Medicine" is primarily geographically descriptive. See Bay State Sav. Bank v. Baystate Fin. Servs., LLC, 484 F. Supp. 2d 205, 213 (D. Mass. 2007) (concluding that "'Bay State'—the nickname of Massachusetts—is a geographically descriptive mark"). Such is bolstered by the principle that "[a]n application for registration on the Supplemental Register is an implied admission that the term is not inherently distinctive." J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 19:43 (5th ed. 2022) (collecting cases); see D. 1-25 at 20; see also Lyons, 997 F. Supp. 2d at 101 (explaining that "marks registered on the supplemental register do not benefit from any presumption of validity" (citing 15 U.S.C. § 1094)).

Defendants, further, argue that BSM has failed adequately to allege that its purported mark "acquired secondary meaning," including by failing to assert how and when it acquired such distinctiveness. D. 17 at 9–10. BSM, however, pleads sufficient facts to carry its burden at this stage, including: allegations that it has used its mark "continuously" and "in connection with and to identify its services, in order to distinguish its services from the services offered by other companies," D. 1 ¶ 24; allegations that it has "made a substantial investment" in its company website and physical locations and held out its mark "to convey an immediate idea" regarding BSM's "high quality of service," id. ¶¶ 25–26; and allegations that BSM's mark has come to be associated with BSM by those who define the market through the mark's "extensive use, continuous promotion, and prominent recognition by noteworthy publications," id. ¶¶ 29–30.

Considering that whether a term has acquired secondary meaning is a factual inquiry involving "vigorous evidentiary" analysis, Boston Beer Co., 9 F.3d at 181, as well as the factors articulated by the First Circuit, id. at 182, BSM has alleged sufficient facts plausibly to suggest that its purported mark has acquired secondary meaning. See Channing Bete Co., Inc. v. Greenberg, No. 3:19-cv-30032-MGM, 2022 WL 43692, at *9 (D. Mass. Jan. 5, 2022) (concluding that plaintiff adequately pleaded his surname had acquired secondary meaning given allegations regarding plaintiff's provision of high-quality educational services and promotion of such services). Moreover, Defendants do not argue that BSM has failed to plead that Defendants' allegedly infringing conduct is likely to cause consumer confusion. See generally D. 17; see also D. 1 ¶¶ 66–67, 69, 72–73, 112–14, 117–19; Boston Duck Tours, 531 F.3d at 12. Accordingly, BSM's federal infringement claim and related claim for recovery of profit, damages, costs and attorneys' fees (Counts I and VI) survive the motion to dismiss. See D. 1 ¶¶ 125–35, 159–61.

"To the extent plaintiff asserts claims for infringement, federal and state law are essentially identical, and accordingly the state claims do not merit separate discussion." Bay State Sav. Bank, 484 F. Supp. 2d at 219. BSM's state-law trademark infringement claims (Counts VIII and IX), therefore, survive alongside the federal infringement claim. See D. 1 ¶¶ 173–88.

Moreover, Defendants' sole argument for dismissal of BSM's state-law unfair competition claims (Counts VII and XIII), D. 1 ¶¶ 162–72, 189–96, is that BSM has failed to plead that its mark has achieved secondary meaning and, therefore, is entitled to protection. D. 17 at 10. Given the Court's conclusions above, Counts VII and XIII likewise survive with the infringement claims.

Accordingly, the Court DENIES Defendants' motion to dismiss Counts I, VI, VII, VIII, IX and XIII.

B. **False Association and False Advertising (Count II)**

Count II asserts a claim of "Federal Unfair Competition and False Advertising" under 15 U.S.C. § 1125(a). D. 1 ¶¶ 136–43. Section 1125(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 122 (2014).

*1. False Association*

To prevail on a false association claim, a party must show that "(1) [d]efendants used a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake[,] or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts." Brown v.

Armstrong, 957 F. Supp. 1293, 1300 (D. Mass. 1997) (internal citation omitted), aff'd, 129 F.3d 1252 (1st Cir. 1997).

Defendants offer no reason for dismissal of the false association claim beyond their arguments for dismissal of the trademark infringement claim (Count I). Considering the elements of this claim, BSM has plausibly alleged that Defendants used the designation "Boston Sports Medicine & Research Institute," see, e.g., D. 1 ¶ 34; that the use was in interstate commerce, see id. ¶ 4; that the use was in connection with physical therapy services, see id. ¶¶ 32, 59; that the designation is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with BSM, id. ¶¶ 66–67, 69, 72–73, 112–14, 117–19, 140; and that BSM has been or is likely to be damaged by these acts, see id. ¶¶ 76, 124. Thus, given the Court's conclusions above regarding Count I—and that the complaint plausibly suggests sufficient facts to satisfy the elements of false association—the false association claim survives.

### 2. False Advertising

To prevail on a false advertising claim, a plaintiff must show that "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310–11 (1st Cir. 2002) (internal citation omitted).

As Defendants argue, D. 17 at 11, BSM has, at minimum, failed to allege any false or misleading statement by Defendants or that such misrepresentation actually deceives or has a tendency to deceive a substantial segment of its audience.  See generally D. 1.  BSM does not respond to this argument.  See D. 21 at 5 (arguing only that the false advertising claim survives because BSM's mark "has acquired the sufficient secondary meaning to acquire distinctiveness").  The false advertising claim, therefore, must be dismissed.

Accordingly, the Court ALLOWS Defendants' motion to dismiss Count II in part and DENIES it in part.  The false association claim survives, while the false advertising claim is dismissed.

### C.   "False Designation" (Count III)

Count III purports to assert a claim of "False Designation" under 15 U.S.C. § 1125(c). D. 1 ¶¶ 144–47.  As Defendants argue, D. 17 at 11–12, however, 15 U.S.C. § 1125(c) relates to trademark dilution, which BSM claims in Count V, discussed below.  Thus, to the extent Count III asserts a claim of dilution, such is duplicative of Count V and, therefore, must be dismissed.  See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013).  Further, to the extent BSM seeks to claim "false designation of origin" under 15 U.S.C. § 1125(a), such is duplicative of its claims for false association and false advertising—the two "distinct bases of liability" established by § 1125(a), Lexmark Int'l, 572 U.S. at 122—and, therefore, must be dismissed.  See Young, 717 F.3d at 237.  Accordingly, the Court ALLOWS Defendants' motion to dismiss Count III.

### D.   Cybersquatting (Count IV)

Count IV asserts a claim under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), based upon Defendants' registration and use of the domain name "bostonsportsmedicine.com."  D. 1 ¶¶ 148–53.  Congress passed the Anti-Cybersquatting

10

Consumer Protection Act "primarily in an effort to stop 'cybersquatters who register numerous domain names containing American trademarks or tradenames only to hold them ransom in exchange for money.'" N. Light Tech. v. N. Lights Club, 97 F. Supp. 2d 96, 115 (D. Mass. 2000), aff'd sub nom. N. Light Tech., Inc. v. N. Lights Club, 236 F.3d 57 (1st Cir. 2001) (quoting H.R. Rep. No. 106-412, at 5).  To state a claim under 15 U.S.C. § 1125(d), a plaintiff must allege that "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." IvyMedia Corp. v. Take Tour, Inc., No. 12-cv-11535-NMG, 2013 WL 5290551, at *11 (D. Mass. July 9, 2013) (citations omitted).

As concluded above, BSM has sufficiently alleged that the phrase "Boston Sports Medicine" is entitled to protection because it has acquired secondary meaning and, thus, distinctiveness.  Further, BSM has sufficiently alleged that Defendants' use of the same phrase—including in its domain name—is confusingly similar to BSM's mark.  See, e.g., D. 1 ¶ 112 (alleging that "customers have used the telephone numbers listed on the respective web sites" and been "directed to the wrong entities").  Defendants argue, D. 17 at 12–13, however, Count IV must be dismissed because BSM does not allege that Defendants have registered or used the domain name "bostonsportsmedicine.com" with a bad-faith intent to profit from BSM's mark.  In determining whether bad faith exists, the Court may consider the following nine non-exhaustive factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's

intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark . . . ; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services . . . ; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name . . . ; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others . . . ; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous.

15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX); Bay State Sav. Bank, 484 F. Supp. 2d at 218.

Defendants contend that they registered and use the domain name "bostonsportsmedicine.com" to "advertise and administer its services," which Defendants provide under the name Boston Sports Medicine & Research Institute. D. 17 at 13; D. 1 ¶ 35; see, e.g., id. ¶¶ 71, 118 (describing medical services allegedly provided by Defendants). Although such legitimate business use cuts against a finding of bad-faith cybersquatting, see N. Light Tech., 97 F. Supp. 2d at 119 (stating that defendants' use of domain name for email purposes for several years weakened finding of bad faith in analyzing defendant's motion to dismiss and plaintiff's motion for preliminary injunction), "[w]hether a party has acted in bad faith constitutes a quintessential issue of fact, which must be determined by the factfinder following an examination of the totality of the circumstances," In re McMullen, 386 F.3d 320, 328–29 (1st Cir. 2004); see Carnivale v. Staub Design, LLC, 700 F. Supp. 2d 660, 669 (D. Del. 2010) (noting that it is "necessary for a fact finder to weigh the statutory factors and other relevant evidence" and "make a factual determination on the existence of bad faith" regarding a plaintiff's cybersquatting claim). BSM has, at minimum, plausibly alleged that Defendants are using a domain name confusingly similar BSM's mark with the intent to profit from that mark by diverting business from BSM to Defendants. See D. 1 ¶¶ 2, 65–66, 102, 115. Such allegations are sufficient at this stage to support

a claim of bad faith. See Flentye v. Kathrein, 485 F. Supp. 2d 903, 915 (N.D. Ill. 2007) (denying motion to dismiss cybersquatting claim based upon allegations "that [d]efendants' websites are intended to confuse and drive away [p]laintiffs' customers, and tarnish [p]laintiffs' marks and goodwill to the commercial benefit of [defendant], a direct competitor").

Accordingly, the Court DENIES Defendants' motion to dismiss Count IV.

### E. Trademark Dilution (Count V)

Count V asserts a claim of trademark dilution under 15 U.S.C. § 1125(c). D. 1 ¶¶ 154–58. Under the Federal Trademark Dilution Act, "only famous and distinctive marks are eligible for protection against dilution." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 36 (1st Cir. 1998) (emphasis omitted). A mark is considered famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "[N]ational renown is an important factor in determining whether a mark qualifies as famous." I.P. Lund Trading ApS, 163 F.3d at 47 (footnote omitted). Mere acquisition of secondary meaning is insufficient to achieve the status of a "famous mark" under the anti-dilution statute. Id. (citation omitted) (noting that "the standard for fame and distinctiveness required to obtain anti-dilution protection is more rigorous than that required to seek infringement protection").

As Defendants argue, D. 17 at 13–14, BSM fails to state a claim of trademark dilution because it does not allege that its mark is "famous." The complaint alleges, in relevant part, that BSM maintains five clinics throughout Eastern Massachusetts and, further, that it has a "thriving web presence which provides interactive programs for users world-wide" and "has offered services nationally and internationally to clients from various countries around the globe." D. 1 ¶ 13. Such

13

allegations fail to establish a plausible basis for establishing "national renown" under the dilution statute.  See I.P. Lund Trading ApS, 163 F.3d at 47.

Accordingly, the Court ALLOWS Defendants' motion to dismiss Count V.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part the motion to dismiss, D. 16.  Count II as to the false advertising claim and Counts III and V are dismissed.  Counts I, IV, VI, VII, VIII, IX, XIII and Count II as to the false association claim remain.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge