UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON SPORTS MEDICINE, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>BOSTON SPORTS MEDICINE AND<br>RESEARCH INSTITUTE, LLC, and DR.<br>THOMAS GILL,<br><br>        Defendants. | No. 1:21-CV-11945-DJC |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Defendants, Boston Sports Medicine and Research Institute, LLC ("BSMRI") and Dr. Thomas Gill, submit this Opposition to Plaintiff's Motion for Summary Judgment. Defendants, not Plaintiff, are entitled to summary judgment, *see* Defendants' Motion for Summary Judgment, Dkt. 68-69, and further set forth below.

Trademark infringement is a two-step inquiry—to prevail, Plaintiff must prove (1) the phrase "Boston Sports Medicine" warrants protection, and (2) Defendants' name is likely to cause confusion. Plaintiff ignores the first element entirely, instead devoting its brief largely to the second step. Plaintiff neither addresses the conclusion that "Boston Sports Medicine" is geographically descriptive nor offers evidence showing that it owns any proprietary rights in the common phrase. Plaintiff not only failed to satisfy the vigorous evidentiary burden required to prove secondary meaning; it did not even try. The inquiry should therefore end, and the case should be dismissed. If the Court continues the analysis, it will find that the undisputed facts show that consumer confusion is unlikely in part because the shared phrase "Boston Sports Medicine" is entitled to no protection, and Defendants never used the same color scheme or a logo design. The Court should dismiss this action entirely.

1

## STATEMENT OF MATERIAL FACTS

Defendants have filed herewith responses to Plaintiff's Statement of Material Facts. As set forth in Defendants' responses, there are disputed facts; however, most are immaterial, and the remainder are unsupported by Plaintiff's evidence or are otherwise inadmissible. Additional relevant facts are set forth in Defendants' Statement of Material Facts, Dkt. 70.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where . . . the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail 'unless the evidence that he provides on that issue is conclusive.'" *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) (quoting *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998)). Evidence is conclusive if "no reasonable trier of fact could find other than for the moving party." *Torres*, 149 F.3d at 35-36 (citation omitted). In considering the evidence, the Court must draw all reasonable inferences in the non-moving party's favor. *E.E.O.C.*, 279 F.3d at 54.

A Court may, with notice and a reasonable time to respond, grant summary judgment for the non-moving party. Fed. R. Civ. P. 56(f)(1). "Thus, the law in the First Circuit is 'well established' that a party that moves for summary judgment runs the risk that 'the court may grant summary judgment *sua sponte* against the movant.'" *Banco do Brasil, S.A. v. 275 Wash. St. Corp.*, 889 F. Supp. 2d 178, 187 (D. Mass. 2012).

2

## ARGUMENT

I.  **PLAINTIFF OWNS NO RIGHTS IN THE PHRASE "BOSTON SPORTS MEDICINE" AND THE USE OF DEFENDANTS' NAME WILL NOT CAUSE CONFUSION.**

A.  **"Boston Sports Medicine" is Descriptive, and Plaintiff has Failed to Prove Secondary Meaning.**

1.  **Plaintiff Exaggerates Its Rights.**

Plaintiff routinely mischaracterizes the scope of its purported rights.[1] Early in this case Defendants noted Plaintiff's propensity to exaggerate. (Dkt. 17, Defs. Mot. to Dismiss at 3.) Yet the misstatements in the Complaint are repeated verbatim in Plaintiff's summary judgment brief. (SOF ¶ 7; compare Compl. ¶¶ 21-23, with Dkt. 72 ("Pl. Br.") at 1.)[2]

The most pernicious misstatement, which appears in the first sentence and is repeated throughout the brief, is the false claim that Plaintiff "owns Federal and State Registrations for the BOSTON SPORTS MEDICINE service mark." (Pl. Br. at 1.) Plaintiff of course owns no rights in the word-only phrase "Boston Sports Medicine." (SOF ¶¶ 8-16.) Its registrations cover Plaintiff's logo: a dominant design of an athlete kicking a ball with "Sports" in a large red font and "Boston" and "Medicine" in smaller teal lettering. (*Id.*) Defendants never used a similar logo or color scheme. (Dkt. 76, Gill Decl. ¶ 40.)

---

[1] Plaintiff has for years exaggerated its rights in the phrase "Boston Sports Medicine." In June 2015, after claiming that it owned rights in the word mark "Boston Sports Medicine," Boston Sports Medicine and Performance Group correctly noted that Plaintiff "does not have a registered trademark for the [Boston Sports Medicine] words standing alone." (Dkt. 73-21, Pl. SOF, Ex. T; SOF ¶ 17.) A month later, in a letter to Dr. Gill, Plaintiff again claimed (incorrectly) that it was "the owner of a well-known mark for 'Boston Sports Medicine,'" citing its logo registration. (Dkt. 73-11, Pl. SOF, Ex. M.) Defendants rejected Plaintiff's demands. Undeterred, in 2021, in its failed UDRP action, Plaintiff again exaggerated its rights. (SOF ¶ 19.) The Panel admonished Plaintiff, noting that Plaintiff "advertently elevated its rights" and "misrepresents its trademark by creating the misimpression that it has a word mark." (*Id.* ¶ 20.) In this action, Plaintiff repeats the misstatement in the Complaint and its interrogatory responses. (Dkt. 46-4 at 3 (claiming to own state and federal registrations for "Boston Sports Medicine" without mentioning the logo). Despite being corrected on multiple occasions, Plaintiff continues to misrepresent its rights to the public, Defendants, and the Court.

[2] Citations to "SOF," are to Defendants' Statement of Facts, Dkt. 70, and citations to "Pl. SOF" are to Plaintiff's Statement of Facts, Dkt. 73.

135493641v.1

### 2. Plaintiff Cannot Benefit from Evidentiary Presumptions Associated With its State and Federal Registrations to Prove Secondary Meaning.

Plaintiff assumes—without citation or analysis whatsoever—that the word element of its state and federal registrations is presumed valid. (Pl. Br. at 9.) Yet both registrations cover a logo design. (SOF ¶¶ 8-10.) The federal logo registration claims acquired distinctiveness of the phrase "Boston Sports Medicine" under 15 U.S.C. § 1052(f), based on five years of use. (*Id.* ¶ 10.) Plaintiff's assumption that it does not have to prove secondary meaning may be clouded by the misapprehension that acquired distinctiveness enunciated in 15 U.S.C. § 1052(f) governs the determination of whether the phrase "Boston Sports Medicine" has secondary meaning in this action. Section 1052(f), however, only applies to the granting of a trademark registration and allows the U.S. Patent and Trademark Office ("USPTO") to presume (for purposes of registration) that a mark has secondary meaning with proof of five years of "substantially exclusive and continuous use." *See Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab., Inc.*, 997 F. Supp. 2d 92, 101 (D. Mass. 2014) (citing *Maple Grove Farms of Vt., Inc. v. Euro-Can Prods., Inc.,* 974 F. Supp. 85, 94 (D. Mass. 1997) (noting that 15 U.S.C. § 1052(f) allows the USPTO to presume a mark has acquired secondary meaning "in [the] registration context").

In contrast, the First Circuit relies on multiple factors when deciding whether a trademark has acquired secondary meaning; the length and manner of a mark's use is only one factor. *See I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 41-42 (1st Cir. 1998); *Stratus Computs., Inc. v. NCR Corp.,* Civ. A No. 87-0141-Z, 1987 WL 7748, at *2 (D. Mass. Feb. 27, 1987) (noting that "bare use [of mark] for five years" does not prove that descriptive mark has acquired secondary meaning). Therefore, Plaintiff must demonstrate more than five years' use to prove that it owns proprietary rights to the highly descriptive phrase.

Further, although a registered mark is presumed valid and entitled to protection, such a

135493641v.1

presumption may be rebutted by proof the mark is either generic or is merely descriptive and lacks secondary meaning. *Bay State Sav. Bank v. Baystate Fin. Services*, LLC, 338 F. Supp. 2d 181, 188 (D. Mass. 2004) (citation omitted). While Plaintiff's registration on the Principal Register endows the logo mark with the presumption that it is eligible for protection, 15 U.S.C. § 1057(b), any presumption extends only to the mark as a whole, and not the use of the common phrase "Boston Sports Medicine." *Lyons*, 997 F. Supp. 2d at 101 (citing *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 9 n.5 (1st Cir. 2008)); *In re Bose Corp.*, 772 F.2d 866, 873 (Fed. Cir. 1985)) (prima facie presumption applies only to the registered design-word composite mark and not to the word mark alone).

"Boston Sports Medicine" is a descriptive phrase that is registered on the Supplemental Register. (SOF ¶¶ 12-16.) The mark does not benefit from any presumption of validity. *See* 15 U.S.C. § 1094. "Rather, [Supplemental Register] marks are considered 'inherently non-distinctive,' but are 'capable of achieving trademark status through the acquisition of secondary meaning and distinctiveness.'" *Lyons*, 997 F. Supp. 2d at 101. (quotation omitted). A term on the Supplemental Register constitutes an implied admission that the phrase is primarily geographically descriptive without having acquired secondary meaning at the time of registration. 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:43 (5th ed. 2023). Therefore, if the Court relies on any presumption, it should be that the phrase "Boston Sports Medicine" was descriptive and had not acquired secondary meaning the date Plaintiff's Supplemental Register registration for "Boston Sports Medicine" issued—October 2, 2018—three years after Defendants started using their name. (SOF ¶ 16.)

Even if the Court decides that Plaintiff may rely on a presumption by virtue of its design mark registration, "[t]he presumption is not . . . retroactive[.] . . . [T]he marks are entitled to a

presumption of secondary meaning only as of the dates the marks were registered." *Bay State Sav. Bank v. Baystate Fin. Services, LLC*, 484 F. Supp. 2d 205, 214 (D. Mass. 2007) ("*Bay State II*"). The only presumption of secondary meaning Plaintiff's mark could ever be entitled to is on June 3, 2015, at the earliest. (SOF ⁋ 10.) But even this presumption is inapplicable because Defendants adopted their name in 2014. *Bay State II*, 484 F. Supp. 2d at 214 (citation omitted) (holding presumption not applicable when the challenged use predated the plaintiff's trademark registration date).

Plaintiff argues that its federal logo registration should be presumed valid. (Pl. Br. at 15.) In support of this assertion, Plaintiff cites *Metamorfoza D.O.O. vs. Big Funny, LLC*, which Plaintiff avers "details the analysis of how word portion [sic.] in a composite mark is entitled to protection separate from the logo portion." (*Id*. at 15 (citing No. CV 21-2020-JFW, 2021 WL 4572039 (C.D. Cal. July 27, 2021).) *Metamorfoza* does not stand for the cited proposition and in fact supports dismissal of this matter. *Id*. at \*4. The court in *Metamorfoza* dismissed the trademark infringement claim because the plaintiff's federal registration for its composite "Museum of Illusions" and design mark disclaimed the entire word "Museum of Illusions" element. *Id*. The court reasoned that the plaintiff "cannot state a claim for infringement [of its word and design mark] based only on Defendants' use of the disclaimed words." *Id*. (citing *McCarthy on Trademarks*, § 16:35 ("If the law will not protect one's claim of right to exclude others from using an alleged trademark, then he does not own a 'trademark,' for that which all are free to use cannot be a trademark.")). It is undisputed that the composite phrase "Boston Sports Medicine" is primarily geographically descriptive, and that Plaintiff has failed to prove secondary meaning. Having failed to prove a protectable interest, Plaintiff cannot exclude others from using the phrase.

135493641v.1

Finally, the presumption that Plaintiff receives based on its logo registration—if any—is limited. The Court may afford "some weight" to the USPTO's finding that the phrase "Boston Sports Medicine" has acquired secondary meaning. *Lyons*, 997 F. Supp. 2d at 102-03 (citation omitted). "District courts have broad authority to review trademark decisions by the [USPTO], both before and after the registration of a mark." *Id*. (citing *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 12 (D.C. Cir. 2008)); *see also* 15 U.S.C. § 1119 (authorizing district courts to cancel registration of marks). Thus, Plaintiff ultimately bears the burden of proving that its mark is entitled to protection, which it has failed to even address, let alone prove.

### 3.    Plaintiff Has Not Proved Secondary Meaning.

For the reasons explained in the Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Dkt. 69 at 3-13, incorporated herein by reference, Plaintiff cannot prove that the phrase "Boston Sports Medicine" is entitled to protection, and therefore Defendants, not the Plaintiff, is entitled to summary judgment on Counts I, II, VI, VII, VIII, IX, XII, and XIII, as well as Defendants' Counterclaim Counts I, II, and III.

Plaintiff's motion ignores the validity of its mark entirely, forcing Defendants and the Court to pick through its brief for facts that show the phrase "Boston Sports Medicine" has secondary meaning. The Court should give no credit to Plaintiff's conclusory statements. *Unleashed*, 2011 WL 6812642, at *14 ("Conclusory allegations and unsupported speculation are insufficient to establish a genuine dispute of fact."). The only evidence that arguably supports validity relates to Plaintiff's length of use. It is undisputed that Plaintiff adopted the name "Boston Sports Medicine" and logo in 2003 and that Plaintiff uses the domain name <bostonsportsmed.com> for its website. (Pl. SOF ¶¶ 6-7.)

7

Plaintiff offers no evidence, however, measuring whether consumers associate the phrase "Boston Sports Medicine" exclusively with Plaintiff. It allegedly uses social media, has Yelp and Google pages for its locations, and has a "thriving web presence," but these assertions are unsupported by any indication that these efforts are recognized by consumers. (Pl. SOF ₱ 8.) Plaintiff also claims that it made a "substantial investment" in its website and brick and mortar locations, but fails to substantiate the expenditures or show that investment yielded results. (*Id*. ₱ 16.)

Plaintiff's geographic footprint is negligible. It runs clinics in only five towns in Eastern Massachusetts. (Pl. SOF ₱ 8.) Plaintiff has fewer than 3,000 total followers on its social media accounts and the total unique visitors to its website in 2012-2013—the relevant period for measuring secondary meaning—remained under 500 visits daily. (SOF ₱₱ 52, 54.) "[A]bsent any evidence that consumers became aware of [Plaintiff's services] through [its] website, the mere existence of a website is not highly probative of either an effective advertising technique or, more to the point, the public's association" of the phrase "Boston Sports Medicine" with Plaintiff. *Lyons*, 997 F. Supp. 2d at 105 (citation omitted). Plaintiff has therefore failed to prove that the phrase "Boston Sports Medicine" has acquired secondary meaning.[3]

## B.    Plaintiff Has Not Proved Likelihood of Confusion.

Even if Plaintiff can show, as an initial matter, that its mark warrants protection, Plaintiff has also failed to prove that Defendants' name is likely to cause consumer confusion. Likelihood of confusion is analyzed by balancing eight factors:

> the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the juxtaposition of their advertising; the classes of prospective purchasers; evidence of actual confusion; defendant's intent in adopting the mark; and the strength of plaintiff's mark.

---

[3] Without secondary meaning, Plaintiff is not entitled to summary judgment because its common law and state claims all fail. (*See* Dkt. 69, Defs. Br. at 12-13.)

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981).

"[T]here is no necessary sequence in the eight-factor analysis." *Boston Duck Tours*, 531 F.3d at

15 (starting analysis by evaluating strength of the plaintiff's mark).

 Considering these factors, as evaluated below, Plaintiff has failed to establish,

conclusively, that there is a likelihood of confusion. Moreover, given the paucity of Plaintiff's

evidence, the Court should grant summary judgment to Defendants on this issue. *See* Fed. R.

Civ. P. 56(f)(1); *Banco do Brasil,* 889 F. Supp. 2d at 187.

  **1. The Phrase "Boston Sports Medicine" is Conceptionally and Commercially Weak.**

The phrase "Boston Sports Medicine" is conceptually and commercially weak.

Conceptionally weak marks should be given a narrow scope of protection. *Unleashed*, 2011 WL

6812642, at *15 (citations omitted). The conceptional strength of a mark is especially relevant

where the composite mark contains a generic phrase. *Boston Duck Tours*, 531 F.3d at 20, 23.

There is no reasonable dispute that "sports medicine" is a generic phrase and that the composite

phrase "Boston Sports Medicine" is highly descriptive of Plaintiff's offerings. (SOF ¶¶ 2-5.)

Plaintiff even uses "sports medicine" generically on its website, by claiming that it has set "A

New Standard in Sports Medicine." (Dkt. 76-11, Gill Decl., Ex. 11 at 2.) This is "strong evidence

of genericness." *Boston Duck Tours*, 531 F.3d at 20 (citation omitted) (finding the plaintiff's use

of the phrase "duck tours" on its website to describe tours in a duck boat was "strong evidence

against its claim that the term is primarily associated with its company rather than the services it

provides").

 Like in *Boston Duck Tours*, the phrase "Boston Sports Medicine" combines a generic

phrase "entitled to no trademark protection at all, with 'Boston,' a weak, descriptive term that

deserves minimal protection." *Id*. at 23. Moreover, many companies are using "Boston Sports

Medicine" in connection with healthcare-related offerings. Plaintiff is not even the senior user of the phrase. New England Baptist Hospital ("NEBH") started the "Boston Sports Medicine" symposium at least three years before Plaintiff. (SOF ¶¶ 33, 56.) For years, "Boston Sports Medicine for Women" and "Boston Sports Medicine and Performance Group" used the phrase in commerce. (*Id.* ¶¶ 57-63.) Today, the phrase "Boston Sports Medicine" is commonly used as domain names or on websites promoting sports medicine services or discussing the practice of sports medicine in the Boston area. (*Id.* ¶¶ 64-69.) Therefore, the composite phrase "Boston Sports Medicine" is conceptionally weak. *See Boston Duck Tours*, 531 F.3d at 23.

The phrase "Boston Sports Medicine" is also commercially weak. Commercial strength is "assessed by examining the length of time the mark has been used, the plaintiff's renown in the industry, the potency of the mark in the product field . . . and the plaintiff's efforts to promote and protect the mark." *Id.* at 23 (citation omitted); *see also* 2 *McCarthy on Trademarks* § 11:82 ("When determining the commercial or marketplace strength of a mark, the courts look to the same kind of evidence of real world recognition of the mark as is used to decide the presence or absence of secondary meaning."). Aside from the assertion that it used the phrase "Boston Sports Medicine" continuously since 2003, Plaintiff offers no evidence to demonstrate the strength of its mark. There is no evidence concerning Plaintiff's renown among consumers or the industry. There are no articles or customer statements discussing Plaintiff's services. Aside from the conclusion that Plaintiff started using the phrase "Boston Sports Medicine" in 2003, Plaintiff has submitted no direct evidence showing the strength or notoriety of its mark.

Plaintiff claims to have sent one demand letter to Boston Sports Medicine and Performance Group, LLC ("BSMPG"). (Pl. Br. at 14.) But this single letter fails to prove the mark is commercially strong; BSMPG's response demonstrates the opposite. BSMPG refused

Plaintiff's demands, correctly noting that "Boston Sports Medicine is a highly descriptive mark and is inherently weak . . . and that the terms Boston Sports and Medicine were used by numerous third parties," and concluding that it would continue to use the "Boston Sports Medicine and Performance Group" mark. (SOF ⁋ 61.) BSMPG later filed a certificate of cancellation as a Massachusetts entity, not in response to Plaintiff's demands, but rather because BSMPG's owner "moved out of the state of MA." (Pl. SOF, Ex. U, Dkt. 73-22.) Further, BSMPG's website is still active. (SOF ⁋ 63.)

This factor therefore weighs heavily in Defendants' favor.

### 2.     The Respective Marks are Dissimilar.

Plaintiff owns no proprietary rights in the phase "Boston Sports Medicine" apart from the accompanying use of a logo design featuring an athlete kicking a ball with the textual elements in red and teal. Defendant has never used the color red or a similar logo design. (Gill Decl. ⁋ 40.) The respective marks, shown in the table below, are therefore dissimilar.

| Plaintiff's Mark | Defendants' Mark |
|---|---|
|  |  |

(SOF ⁋⁋ 8, 40.)

The degree of similarity between two marks "is determined by analyzing their sight, sound, and meaning." *Boston Duck Tours*, 531 F.3d at 24 (citation omitted). Although similarity is determined on the total commercial impression of the mark, courts give less weight to the generic elements of composite marks. *Id*. Courts should therefore compare "the non-generic

components of a mark . . . in the context of the overall composite mark." *Id.* at 23 (quoting *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 491 (2d Cir. 1988)).

Defendants have never used a logo featuring an athlete, a ball, or an athlete kicking a ball. (Gill Decl. ⁋ 40; Dkt. 73-9 (screenshot of Defendants' website in 2015); Dkt. 73-20 (screenshot of Defendants website in 2023).) Nor have Defendants ever used the color red in BSMRI's logo. (*Id.*) Defendants' logo mark features no graphic design elements. Rather, it features the words "BOSTON SPORTS" above "MEDICINE" in a large blue small-caps serif font with "& RESEARCH INSTITUTE" in smaller, black-colored font.

In contrast, the large red word "Sports" dominates Plaintiff's logo, with the words "Boston" and "Medicine" obscured by the large, black-colored athlete design. While the respective marks use the unprotectable phrase "Boston Sports Medicine," the words in Plaintiff's logo vary in font and color and are not in all-caps, and Plaintiff's logo arrays the words over the dominant graphical element. Defendants have never used a similar logo. (*Id.*) Defendants' mark sounds different because it includes the "& Research Institute" elements. Thus, the respective marks look different, sound different, and convey different commercial impressions.

Plaintiff complains that Defendants' logo adopts "the identical shade of blue" used by Plaintiff. (Pl. Br. at 8.) Aside from Plaintiff's conjecture, this conclusion is unsupported by documentary evidence. Moreover, Plaintiff's registration identifies the color as "teal" not "blue." (Dkt. 73-1.) Plaintiff neither identifies the shade of teal or blue that the respective parties use nor proves that consumers associate that unknown shade exclusively with Plaintiff's offerings. (Pl. Br. at 8 (citing only the respective logo images but offering no information on the respective colors).) *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 159-60 (1995) (holding color marks are not inherently distinctive and thus must develop secondary meaning before receiving

12

protection).

The color blue is used by a number of healthcare providers. For example, NEBH owned U.S. Trademark Registration No. 4139181 for its "blue asterisk" logo. (Tenney 2d Decl., Ex. 48.) Dr. Gill has been associated with NEBH since Defendants adopted the challenged name in 2014. (Gill Decl. ¶ 14.) Defendants' website has advertised this fact, showing its "Boston Sports Medicine & Research Institute" name next to NEBH's federally registered logo mark. (Dkt. 73-13 (screenshot of Defendants' website in 2015).) In February 2015, Defendants used its logo in close association with NEBH's blue (not teal) asterisk logo, shown below.



(*Id.*) On encountering Defendants' website, rather than associating Defendants' services with Plaintiff, consumers would correctly recognize that Defendants adopted its mark using a similar shade as NEBH, a hospital associated with Defendants.

This factor therefore favors Defendants.

### 3.    Defendants' Adopted Their Name in Good Faith.

Defendants adopted the name "Boston Sports Medicine and Research Institute" because it describes Dr. Gill's experience and the geographic area where Dr. Gill has always offered his sports medicine-related services. (Dkt. 76, Gill Decl. ¶ 24.) When Dr. Gill started BSMRI in 2014, he had already participated in the "Sports Medicine Conference" in Boston, hosted by Mass General, and knew that NEBH had hosted the "Boston Sports Medicine" symposium for over a decade. (*Id.* at ¶ 24.) Furthermore, when Defendants started, the Commonwealth of

Massachusetts allowed Dr. Gill to form a company with BSMRI's name, and the domain name <BostonSportsMedicine.com> was available for purchase. (*Id.* at ¶¶ 23-24, 30.)

Aside from unsupported conclusions, Plaintiff offers no direct evidence that Defendants had actual knowledge of Plaintiff or its purported mark prior to 2014. Plaintiff instead claims that it referred patients to the orthopedic department of St. Elizabeth's Hospital, and Dr. Gill in turn treated a handful of these patients. (Pl. Br. at 13.) Plaintiff insists that Defendants must have heard of Plaintiff before 2014, citing medical records where Dr. Gill allegedly "signed as attending physician." (*Id.*) To support this assertion, Plaintiff cites its Statement of Facts ¶ 23, which in turn refers to "Document # 1-6 at pages 58-122," which appear to be initial evaluation reports sent between the parties' respective offices.[4]

The conclusion that Dr. Gill knew Plaintiff owned protectable rights in the "Boston Sports Medicine" name is unsupported by the cited documents. Plaintiff's president acknowledges that doctors rarely sign these reports and agrees that "there is no indication" that Dr. Gill reviewed the patient evaluations. (Dkt. 75, Tenney Decl., Ex. 1, Velsmid 1st Dep. at 285-89.) It is unreasonable to conclude that Defendants should have known Plaintiff was using the descriptive phrase on non-competing services based on less than five patient referrals over a 13-year period. Even if Dr. Gill recognized the name (he didn't), Plaintiff only used the logo design (not the work mark), and never used a ® or ™ symbol or any indication that it claimed

---

[4] Plaintiff neither attaches the cited documents to its motion nor explains which pages are relevant. Instead, it forces Defendants and the Court to dig for the relevant evidence. However, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc.*, No. 10-10742-DJC, 2011 WL 6812642, at *14 (D. Mass. Dec. 28, 2011) (citing *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

the exclusive right to use the phrase "Boston Sports Medicine." These documents therefore do not demonstrate that Defendants adopted the mark to take advantage of Plaintiff's goodwill.[5]

This factor also favors Defendants.

### 4.      The Parties Do Not Compete.

The undisputed evidence confirms that the parties are not direct competitors. Plaintiff offers physical therapy services. (SOF ⁋ 3.) Plaintiff does not provide surgery services. (*Id.* ⁋ 6.) Dr. Gill is an orthopedic surgeon, and BSMRI is his private practice. (*Id.* ⁋⁋ 25-28.) Plaintiff nonetheless concludes—without citing any facts—that the "parties advertise and provide physical therapy services." (Pl. Br. at 11.) This statement is false. Neither Dr. Gill nor BSMRI provide physical therapy services. (SOF ⁋ 29.)

Dr. Gill provides information concerning physical therapies so that his patients can provide instructions to their physical therapists and show them the most beneficial protocol for their injury. (*Id.* ⁋ 39.) Merely providing patients with recommended protocols to use in physical therapy or posting information about physical therapy on a website is not the same as, and does not directly compete with, offering or advertising physical therapy services. This factor weights in Defendants' favor.

### 5.      Misdirected Inquiries Fail to Prove Actual Confusion.

Plaintiff's purported confusion evidence is inadmissible and cannot be taken at face value. As an initial matter, Plaintiff concludes—without any argument or support whatsoever—that "the evidence of actual confusion is specific and includes details about the actual circumstances of the confusion." (Pl. Br. at 13.) Defendants and the Court are again forced to pick through the purported facts and guess which evidence concerns this factor. Therefore,

---

[5] The UDRP Panel, relying on largely the same facts offered by Plaintiff in this action, concluded: "There is no proof that consumers, Dr. Gill or any other practitioner in the sports medicine field would recognize the phrase as being exclusively associated with [Plaintiff]." (SOF ⁋ 20; Dkt. 1-26, Compl., Ex. Z at 10.)

Plaintiff failed to meet its burden. *Unleashed*, 2011 WL 6812642, at *14 ("Conclusory allegations and unsupported speculation are insufficient to establish a genuine dispute of fact.").

Should the Court consider Plaintiff's evidence, it seems that Plaintiff would cite communications about a misdirected check, a Twitter post from an unknown user, a secondhand report from a conference attendee, and accounts of various allegedly misdirected patients who were looking for Dr. Gill (and, as it turns out, many other doctors as well). (Pl. SOF ¶¶ 34-36, 46-47, Ex. N.) This evidence—all court statements offered to prove the truth of the matter asserted, unsupported by any sworn testimony—constitutes inadmissible hearsay, and "may not be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990); Fed. R. Evid. 801(c); *see also Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011) ("It is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted.") (citation omitted); *Clearview Software Int'l, Inc. v. Ware*, No. 07-cv-0405, 2011 WL 4007397, at *2 (D.N.H. Sept. 9, 2011) (declining to consider at summary judgment the emails of third parties who have not given sworn statements or been deposed); *Wild Willy's Holding Co., Inc. v. Palladino*, 463 F. Supp. 2d 65, 71 (D. Me. 2006) (declining to consider hearsay emails to establish actual confusion).

Moreover, none of the evidence is relevant to or evidence of actual confusion. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). "Actual confusion must be 'commercially relevant.'" *Unleashed*, 2011 WL 6812642, at *12 (citing *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 15 (1st Cir. 2004)). That is, the "actual confusion must be capable of inflicting 'commercial injury in the form of . . . diversion of sales, damage to goodwill or loss of control over reputation on the trademark holder.'" *Id*. Plaintiff provides no evidence that the alleged "confusion presents a significant risk to the sale or goodwill of the trademark

owner." *Id*.

Plaintiff's purported confusion evidence of misdirected checks by a bank is not commercially relevant. *See Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1207 (1st Cir. 1983) (temporary initial confusion of lab technician irrelevant). The social media post and call logs are also insufficient to show actual confusion. *See id.* ("[t]emporary initial confusions is insufficient for infringement claim."); *Am. Consumer Credit Counseling, Inc. v. Am. Consumer Credit, LLC*, No. 16-CV-12170-IT, 2017 WL 1534190, at *6 (D. Mass. Apr. 27, 2017) (misdirected emails from defendant's customers insufficient to show actual confusion where there was no evidence of customers who used defendant's service under the misbelief they were using plaintiff's services, and all of the misdirected emails were from defendant's customers, not plaintiff's); *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 125 (D. Mass. 1999) (web browsers accessing wrong domain name is "not substantial enough to be legally significant."), aff'd, 232 F.3d 1 (1st Cir. 2000). "[T]his is the type of 'temporary confusion' that Courts have rejected because such evidence is not commercially relevant." *Unleashed*, 2011 WL 6812642, at *13. "To be commercially relevant, [Plaintiff] would need to show that the confusion influenced a purchasing decision or injured [its] reputation or goodwill." *Id*. Plaintiff cannot make either showing.

The parties offer distinct services and hold different professional licenses. (SOF ¶¶ 3, 6, 22, 25-29; Tenney Decl., Ex. 1, Velsmid 1st Dep. at 15.) Thus, it is impossible that any purported initial confusion diverted sales or that Plaintiff has lost customers due to any misdirected communications. Nor does Plaintiff offer any evidence that it suffered damage to its goodwill or loss of control over its reputation due to Defendants' business. *See, e.g.*, *Beacon Mut.*, 376 F.3d at 10 ("Confusion is relevant when it exists in the minds of persons in a position

to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner.").

On the contrary, Plaintiff sought to work with Defendants, as well as Steward Medical Group and St. Elizabeth's Hospital. (Dkt. 75-1, Velsmid 1st Dep. at 64-65.) Even after this latest suit was filed, Plaintiff acknowledged that "Defendants do have a good reputation for providing excellent care." (*Id*. at 126-27.) Plaintiff cannot show that any of the instances of purported confusion would inflict a commercial injury. *See Unleashed*, 2011 WL 6812642, at *13 (finding "no risk that customers would or could purchase pet care services at Unleashed by Petco thinking it was [plaintiff] because Petco simply does not offer them"). These documents therefore have no probative value.

Plaintiff chose to adopt a highly descriptive phrase as its name so "[i]f any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (noting that the "tolerance of a certain degree of confusion on the part of consumers followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first.").

Plaintiff has not shown any relevant, meaningful showing of actual confusion or a likelihood of consumer confusion. This factor favors Defendants.

###     6.    There is no Competition in Advertising, Channels of Trade, Prospective Customers.

The parties do not compete in the marketplace, in their advertising, or for prospective patients. To the contrary, Plaintiff routinely accepted referrals and worked with BSMRI to treat

their shared patients. (SOF ⁋ 80.) Aside from unsupported conclusions, Plaintiff offers no credible evidence disputing these facts. This factor weighs in Defendants favor.

### 7.    Foregoing Factors Demonstrate that Confusion is Impossible.

In sum, the balance of the eight *Pignon* factors weigh in Defendants' favor showing that Defendants' use of "Boston Sports Medicine and Research Institute" will not result in consumer confusion. Accordingly, considering the present record, no reasonable jury could conclude that Plaintiff has demonstrated that its purported mark "Boston Sports Medicine" is distinctive, has acquired secondary meaning, or that confusion is likely. Defendants—not Plaintiff—are therefore entitled to summary judgment as to Counts I, II, VI, VII, VIII, IX, XII, and XIII, as well as Defendants' Counterclaim Counts I, II, and III.

## II.    THE CYBERSQUATTING CLAIM MUST BE DISMISSED.

Defendants, not Plaintiff, are entitled to summary judgment on Count IV, Plaintiff's claim under the Anti-Cybersquatting Consumer Protection Act, 16 U.S.C. § 1125(d). "To succeed on a cybersquatting claim, the proponent must prove (1) the claimant owns the right to the relevant mark; (2) the defendant has registered, trafficked in, or used a domain name that is identical or confusingly similar to a distinctive mark or a famous mark at the time of registration; and (3) the defendant had a bad faith intent to profit from the plaintiff's mark." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, No. 09-11505-GAO, 2012 WL 1067647, at *1 (D. Mass. Mar. 29, 2012); *see also IvyMedia Corp. v. Take Tour, Inc.*, No. 12-cv-11535-NMG, 2013 WL 5290551, at *11 (D. Mass. July 9, 2013).

Plaintiff cannot meet the first element because it owns no rights in the phrase "Boston Sports Medicine," as discuss above. Plaintiff fails to clear the second step because the phrase "Boston Sports Medicine" is not distinctive and Plaintiff cannot show that the phrase has acquired secondary meaning—let alone being famous at the time Defendants registered the

135493641v.1

challenged domain name. Plaintiff also cannot prevail on the third element because there is no evidence Defendants registered the name in bad faith, as set forth in the Defendants' motion for summary judgment, Dkt. 69 at 13-14. For these reasons, Count IV fails as a matter of law.

## III.   PLAINTIFF IS NOT ENTITLED TO A MONETARY AWARD.

Count VI of the Complaint seeks "Recovery of Profits, Damages, Costs and Attorneys' Fees, 15 U.S.C. § 117 and §1114." This Count does not allege a separate cause of action; rather it seeks remedies under the Lanham Act relevant to other Counts. However, Plaintiff has submitted no evidence that Defendants' use of their name has damaged Plaintiff. And, for the reasons explained in Defendants' motion for summary judgment, Dkt. 69 at 18-20, Plaintiff is not entitled to Defendants' profits.[6]

## <u>CONCLUSION</u>

For the foregoing reasons, and those stated in Defendants' summary judgment motion and supporting memorandum, the Court should enter an order denying Plaintiff's motion for summary judgment and allowing Defendants' motion for summary judgment.

---

[6] Plaintiff devotes two pages to an alleged agreement between the parties. (Br. at 6-7.) There was no such agreement as explained in Defendants' Responses to the Plaintiff's Statement of Facts. Moreover, these facts are not material. The only Count in which Plaintiff discusses these allegations is in connection with Count VI, claiming that this is an "exceptional case." (Br. at 17.) Yet Plaintiff's counsel has admitted that the allegations of a supposed agreement were merely "explanatory" for the Court. (Dkt. 27, Hrng. Tr. at 19-20.)

135493641v.1

Respectfully submitted,

BOSTON SPORTS MEDICINE AND
RESEARCH INSTITUTE, LLC and DR.
THOMAS J. GILL,
By their attorneys,

Date:   December 15, 2023          By:   */s/ Elizabeth H. Kelly*

Elizabeth H. Kelly (BBO No. 672277)
liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
T. 617.230.0100

H. Straat Tenney (admitted *pro hac vice*)
straat.tenney@lockelord.com
LOCKE LORD LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
T. 212.912.2915

Thomas G. Yoxall (admitted *pro hac vice*)
tyoxall@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue #2800
Dallas, Texas 75201
T. 214.740.8000

## CERTIFICATE OF SERVICE

I certify that on December 15, 2023, the foregoing was served electronically upon all counsel of record by filing through the ECF system.

*/s/Elizabeth H. Kelly*
Elizabeth H. Kelly

21